**HEARST** *corporation*

*Jonathan R. Donnellan*
*Vice President*
*Deputy General Counsel*

*Office of*
*General Counsel*

*Eve Burton*
*Senior Vice President*
*and General Counsel*

*Jonathan R Donnellan*
*Mark C Redman*
*Vice President*
*Deputy General Counsel*

*Kristina E Findikyan*
*Larry M Loeb*
*Kenan J Packman*
*Peter P Rahbar*
*Maureen Walsh Sheehan*
*Ravi V Sitwala*
*Jack Spizz*
*Debra S Weaver*
*Senior Counsel*

*Jennifer Bishop*
*Abraham S Cho*
*Marianne W Chow*
*Adam Colón*
*Travis P Davis*
*Carolene S Eaddy*
*Shari M Goldsmith*
*Carl G Guida*
*Audra B Hart*
*Diego Ibargüen*
*Charlotte Jackson*
*Siu Y Lin*
*Alexander N Macleod*
*Kate Mayer*
*Kevin J McCauley*
*Alexandra McGurk*
*Jonathan C Mintzer*
*Aimee Nisbet*
*Elliot J Rishty*
*Shira R Saiger*
*Eva M Saketkoo*
*Aryn Sobo*
*Jennifer G Tancredi*
*Stephen H Yuhan*
*Counsel*

*Catherine A Bostron*
*Corporate Secretary*

**BY EMAIL**                                                                                               July 13, 2015

Honorable Analisa Torres
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   ***Suzanne Boelter, individually and on behalf of others similarly situated v. Hearst Communications, Inc.***, **Case No. 15 Civ. 03934 (AT)**

Dear Judge Torres:

      I write on behalf of Defendant Hearst Communications, Inc. ("Hearst") pursuant to Rule III.A(ii) of Your Honor's Individual Practices to respectfully request a conference concerning Hearst's anticipated motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative for a stay pending the outcome of a potentially dispositive case before the U.S. Supreme Court, for the reasons set forth below.  Hearst has complied with Individual Practice Rule III(B)(i).

**1.**   **Key Factual Allegations**:  Hearst is a publisher of widely-circulated magazines (Compl. ¶ 1) and Plaintiff Suzanne Boelter is a subscriber to one of those magazines, *Country Living*.  Plaintiff alleges that Hearst violated the Michigan Video Rental Privacy Act (the "VRPA"), M.C.L. § 445.1711 *et seq.*, by "selling" her "Personal Reading Information" ("PRI")—meaning her name, title of the magazine she subscribed to, and home address—to third parties.  (Compl. ¶¶ 2, 5)  Plaintiff claims that this resulted in her receiving "third party print advertisements and marketing calls."  (Compl. ¶ 72)  She also claims that part of her magazine subscription price should have ensured the confidentiality of her PRI, that she did not get that value, and that Hearst was thus unjustly enriched.  (Compl. ¶¶ 69-71, 78, 80-82)  Plaintiff styles this case as a class action seeking a statutory penalty of $5,000 for herself and every member of a putative class of all Michigan resident subscribers whose PRI has been shared with third parties without consent, creating a theoretical damages claim of catastrophic proportions.  While the VRPA does not apply to all those who may possess PRI, plaintiff alleges that Hearst is a "retailer" covered by the law because it sells magazine subscriptions.  (Compl. ¶ 54)

**2.**   **The Statute At Issue**:  The Michigan VRPA was enacted in 1988, in the wake of the federal Video Privacy Protection Act ("VPPA").  Both laws were a reaction to a newspaper article that discussed videos that Judge Robert Bork had

1

rented from his neighborhood video store; the article was published during debate over Judge Bork's nomination to the Supreme Court. (Compl. Ex. A)  The Michigan law is far broader than the VPPA, and is not confined to video rental histories.  It provides that persons "engaged in the business of selling at retail, renting, or lending books or *other written materials . . .* shall not disclose to any person, other than the customer, a record *or information concerning* the purchase, lease, rental, or borrowing of those materials by a customer *that indicates* the identity of the customer."  M.C.L. § 445.1712 (emphasis added).  The VRPA incorporates several exceptions to its broad sweep, including disclosures "for the exclusive purpose of marketing goods and services directly to the consumer."  M.C.L. § 445.1713(d).  The VRPA thus makes an exception for the very sort of disclosures targeted by the Complaint.  Those invoking the marketing exception "shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." *Id*.  Violation of the VRPA is punishable criminally as a misdemeanor (§ 445.1714), and also carries a minimum civil penalty of $5,000–providing for "the greater of" that penalty or actual damages caused by disclosure (§ 445.1715).  In addition, the VRPA provides separately for the recovery of attorneys' fees and costs.  (*Id*.)  The VRPA's generous penalty and fee provisions make claims by individual plaintiffs economically feasible given the clear legal bar on class actions under the VRPA in Michigan courts.[1]

This suit is one of several putative class actions in recent years targeting media companies and challenging decades-old practices that are fully disclosed to consumers.  Prior to these suits, the Michigan VRPA had never been enforced or challenged since its 1988 enactment.

**3.       Plaintiff Lacks Standing Because She Alleges No Injury in Fact**:  Plaintiff lacks both Article III standing and statutory standing because the VRPA's statutorily-defined damages award does not confer standing and no other cognizable injury is alleged in the Complaint.

a.  *Article III Standing*:  Article III standing requires a concrete and particularized "injury in fact."  A statute authorizing a right of action absent an injury in fact cannot satisfy these requirements.  *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (Article III standing cannot be erased "by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").  "[I]t is axiomatic that states 'have no power directly to enlarge or contract federal jurisdiction'" and may not "confer an Article III injury where none would otherwise exist." *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 540-41 (N.D. Cal. 1994) (citation omitted).  Plaintiff cannot rely on state law to expand Article III standing.  *See, e.g.*, *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744(KPF), 2014 WL 1133567, at *10 (S.D.N.Y. Mar. 21, 2014); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992) (state legislatures may not "by way of a state created right, confer injury in the Art. III sense where none would otherwise exist").

---

[1] The VRPA was enacted three years after enactment of a Michigan court rule that bars the maintenance of class actions based on statutory penalty claims absent an express statutory provision permitting a class remedy.  Mich. Court Rule 3.501(A)(5) (prohibiting class action for recovery of statutory minimum "without regard to actual damages" unless the statute under which recovery is sought "specifically authorizes" such class actions).  The Michigan Legislature deliberately chose not to include such a provision in the VRPA.  *See Malcolm v. City of East Detroit*, 437 Mich. 132, 139 (1991) (applying "well-tested principle of construction that the Legislature is held to be aware of the existence of the law in effect at the time of its enactments").

      b. *Statutory Standing*:  In any event, the VRPA's statutory damage award does not eliminate the need to demonstrate actual injury under the statute.  *See McNeal v. Blue Bird Corp.*, No. 308763, 2014 WL 2619408, at *9 (Mich. Ct. App. June 12, 2014) (where a statute sets a minimum damages award, plaintiff must still provide evidence of actual damages in order to qualify for statutorily-defined minimum award).  To construe it otherwise would render nugatory the VRPA's phrase "whichever is greater" in M.C.L. § 445.1715(a).  *See Dale v. Beta-C, Inc.*, 227 Mich. App. 57, 65 (1997).  The Complaint does not set forth any plausible theory of actual damages from the alleged disclosure of plaintiff's status as a *Country Living* subscriber.  Conclusory allegations of "overpayment" (*e.g.*, Compl. ¶¶ 69-70) are insufficient for standing purposes.  *See, e.g.*, *Carlsen v. GameStop, Inc.*, No. 14-3131, 2015 WL 3538906, at *4 (D. Minn. June 4, 2015) (claim "that [plaintiff] would not have paid as much for the . . . subscription if he had known how his [personal information] would be handled" did not confer standing).

      c. *In the Alternative to Dismissal, a Stay is Warranted*:  In the event the Court denies the motion to dismiss based on standing, it should stay the action pending the outcome of a potentially dispositive case concerning Article III standing that will be decided next Term by the U.S. Supreme Court.  In *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.), the Supreme Court will decide whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute.  Because *Spokeo* may be dispositive of this case on the fundamental threshold issue of standing, without the need to reach separate issues concerning jurisdiction,[2] state legislative power to confer standing, or the constitutional validity of the VRPA, a stay of proceedings would be particularly appropriate.  *See, e.g.*, *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("[A] court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action.") (collecting Second Circuit cases).

**4.**     **The Court Lacks Jurisdiction Over Plaintiff's Claim**:  This case should not be in federal court.  Michigan specifically intended that VRPA's statutory penalty claims be litigated individually, and designed the law to that end.  (*See* Sec. 2, *supra*)  Plaintiff invokes jurisdiction under the Class Action Fairness Act (28 U.S.C. § 1332(d)) ("CAFA") for her putative class action, but neither CAFA nor Fed. R. Civ. P. 23 create class action jurisdiction over a state claim that Michigan specifically determined should be maintained on an individual basis.  Michigan's bar on class action relief for statutory penalty claims is "sufficiently interwoven with the scope of [the] substantive right or remedy" created by the VRPA as to limit the remedy in class cases to actual damages.  *See Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 423, 429 (2010) (Stevens, J., concurring and providing controlling fifth vote to plurality).  Rule 23 and CAFA thus cannot be applied in this case to override Michigan's bar on class action relief.  *Id*.  Indeed, CAFA was intended in large part to bar plaintiffs from "gaming the system" to expand class action liability as plaintiff has done here.  *See id*. at 459 (Ginsburg, J., dissenting).  Because plaintiff's class action for statutory damages is legally untenable, there is no jurisdictional basis for plaintiff's claim.  The Complaint raises no federal question, and plaintiff's claim does not satisfy the amount in controversy requirement for regular diversity jurisdiction under 28 U.S.C. § 1332(b).

---

[2] This issue, set forth in paragraph 4 below, is another Article III deficiency supporting dismissal under Rule 12(b)(1).

Moreover, plaintiff has not shown actual damages, let alone actual damages sufficient to satisfy CAFA's amount in controversy requirement. *Id*. § 1332(d)(2).

**5.     The VRPA Violates The First Amendment**: Plaintiff's claims fail because the VRPA is unconstitutional on its face and as applied.

a. *Facial Invalidity*[3]: A law is void on its face under the overbreadth doctrine if it "does not aim specifically at evils within the allowable area of [government] control, but … sweeps within its ambit other activities that constitute an exercise" of protected expression. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). The VRPA is a classic example of an overbroad law. It is a deliberate and sweeping attempt to criminalize and deter through draconian penalties a broad array of speech protected by the First Amendment. The statute is content-based, discriminates between different types of speech and different speakers, and specifically targets non-commercial speech by making direct marketing exempt. The law was in fact a reaction to a newspaper article, and an explicit effort to restrain such reporting—or any other expression relating to any individual's consumption of any "other written materials." (Compl. ¶ 18 & Ex. A) The VRPA thus targets fully protected non-commercial speech and is subject to strict constitutional scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2738 (2011) (citation omitted); *see also, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (content-based laws are presumed unconstitutional). The VRPA is void for overbreadth because it makes illegal a substantial amount of protected expressive activity, and because it is not susceptible to any constitutional saving construction. *See, e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). The overbreadth doctrine is not concerned with the statute as applied to defendant's conduct—it permits a challenge to a statute on its face because it threatens others not before the court and thus is an exception to the rule that individuals generally may not litigate the rights of third parties. *E.g.*, *Brockett v. Spokane Arcades, Inc*., 472 U.S. 491, 503 (1985). The VRPA also fails strict scrutiny because it discriminates on the basis of content, seeking to foreclose newspaper reporting, for example, but not marketing. *See R.A.V.*, 505 U.S. at 381, 387. It further discriminates against only certain speakers, namely those "in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." VRPA § 445.1712(2); *see Brown*, 131 S. Ct. at 2740 (striking statute singling out purveyors of video games for disfavored treatment).

b. *Unconstitutional As Applied*: Separate and independent from its facial invalidity, the VRPA is also unconstitutional as applied against Hearst. The Complaint targets fully protected non-commercial speech, and cannot survive strict scrutiny. The PRI at issue does not fit any definition of commercial speech. Neither the fact that PRI may be sold nor the arid nature of its content make it commercial speech. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952); *Sorrell v. IMS Health, Inc*., 630 F.3d 263, 271-72 (2d Cir. 2010) ("The First Amendment protects even dry information, devoid of advocacy, political relevance, or artistic expression."), *aff'd*, 131 S. Ct. 2653, 2666-67 (2011) (quoting same); *see also United States v. Stevens*, 559 U.S. 460, 468-72 (2010) (speech not within historically unprotected categories is fully protected by First

---

[3] The Michigan VRPA has never been subject to a facial challenge on First Amendment grounds, likely because it appears never to have been the subject of litigation until recently.

Amendment).[4]  Protection of plaintiff's purported privacy interest in the fact that she subscribes to *Country Living* magazine is not a compelling government interest, certainly not one overriding Hearst's rights under the First Amendment, and the VRPA is not narrowly tailored to directly advance that interest in any event, being both overinclusive and underinclusive in its scope.

**6.    Failure to State a Claim**:

a.  *VRPA Claim*:  The VRPA by its terms imposes liability on retailers only.  M.C.L. § 445.1712.  Hearst's sale of *subscriptions*, however, is not "at retail," notwithstanding the Complaint's contrary conclusion (Compl. ¶ 54).  *Cf. Haley v. Nunda Twp*., No. 250082, 2005 WL 94791, at *2 (Mich. Ct. App. Jan. 18, 2005).  Plaintiff admits that she was a subscriber and does not claim to have paid the full cover retail price of *Country Living* magazine.

Plaintiff's VRPA claim also fails because the VRPA specifically provides for the disclosure of PRI for marketing purposes, Hearst informed Plaintiff that her PRI could be disclosed for marketing purposes, and Plaintiff has alleged no non-marketing uses or alleged that she asked that her PRI not be disclosed.  *See* M.C.L. § 445.1713(d).  Plaintiff's allegation that she did not receive notice of possible disclosure for marketing purposes (Compl. ¶ 64) is belied by every issue of *Country Living* magazine, which informs readers that "we make our subscriber list available to companies who sell goods and services by mail . . . ."

b.  *Unjust Enrichment Claim*:  Plaintiff's unjust enrichment claim relies entirely on the theory that the VRPA created an entitlement to confidentiality in Plaintiff's PRI, and that she paid more for her subscription in expectation of that privacy.  (Compl. ¶¶ 78-80)  No claim is stated under the facts alleged.  First, the VRPA is her exclusive remedy as to any purported privacy interest concerning her PRI and preempts any unjust enrichment claim.  *See, e.g*., *McNeil v. Charlevoix Cnty.*, 484 Mich. 69, 90 (2009); *cf. Jackson v. PKM Corp.*, 430 Mich. 262, 278-79 (1988). Second, the VRPA does not create a right to be free of "unwarranted offers" from marketers.  *Cf*. M.C.L. § 445.1713(d).  Third, Plaintiff's conclusory claim that she overpaid for her subscription is not plausible and is without factual basis.  Plaintiff does not allege that she was even aware of the VRPA's "statutory privacy protections" that she claims to have "paid for" before purchasing a subscription to *Country Living* magazine (Compl. ¶¶ 7, 80, 82), much less what "portion of the purchase price . . . was intended to ensure the confidentiality of Plaintiff's . . . PRI", or what discount Plaintiff "would have commanded to voluntarily forego" the alleged protections of the VRPA (Compl. ¶ 82).

Respectfully Submitted,<br><br>/s/ Jonathan R. Donnellan<br>Jonathan R. Donnellan

cc:         All counsel of record (via email)

---

[4] In their July 8, 2015 letter response, counsel for Plaintiff recognized the application of *Sorrell* to this case, but stated that the court in *Halaburda v. Bauer* rejected the arguments advanced here.  That is incorrect.  While *Sorrell* was cited to the *Halaburda* court as a reason to read the VRPA narrowly, the First Amendment challenges presented here were neither briefed nor considered by the court.  Plaintiff's counsel's reliance on the *Halaburda* court's decision on other points is misplaced as well.  The court's ruling is not persuasive, and not controlling in any event.