**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SUZANNE BOELTER, individually and on behalf of
all others similarly situated,

                         Plaintiff,

      v.

HEARST COMMUNICATIONS, INC.,

                     Defendant.

Civil Action No. 15-cv-03934-AT

**PLAINTIFF'S OPPOSITION TO DEFENDANT HEARST COMMUNICATION, INC.'S
<u>MOTION TO DISMISS</u>**

Dated:  September 14, 2015

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       pfraietta@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

STATUTORY AND FACTUAL BACKGROUND ...................................................... 3

LEGAL STANDARD............................................................................................ 5

ARGUMENT ..................................................................................................... 6

I.   PLAINTIFF HAS ARTICLE III STANDING TO ASSERT CLAIMS
     UNDER THE PRESERVATION OF PERSONAL PRIVACY ACT............................. 6

     A.   Plaintiff Sufficiently Alleges A Violation Of The Preservation Of
          Personal Privacy Act, And Therefore Has Article III Standing To
          Pursue Her Claims ........................................................................ 6

     B.   The Injury Required By Article III Can Exist Solely By Virtue Of
          Statutes Creating Legal Rights.......................................................... 8

     C.   Although Not Required, Plaintiff Sufficiently Alleges Economic
          Loss ........................................................................................... 13

II.  PLAINTIFF MAY ASSERT HER CLAIMS IN FEDERAL COURT
     PURSUANT TO THE CLASS ACTION FAIRNESS ACT ........................... 18

     A.   Rule 23, Not Michigan Court Rule 3.501, Controls And Plaintiff
          May Therefore Pursue Statutory Damages ......................................... 18

     B.   CAFA Confers Jurisdiction Over Plaintiff's Claims ........................... 21

     C.   Michigan Court Rule 3.501 Is Procedural, Not Substantive.................. 23

III. THE PRESERVATION OF PERSONAL PRIVACY ACT DOES NOT
     VIOLATE THE FIRST AMENDMENT.................................................. 25

     A.   Intermediate Scrutiny Applies To Restrictions On Commercial
          Speech ....................................................................................... 25

     B.   The Preservation of Personal Privacy Act Survives A Facial
          Challenge ................................................................................... 30

     C.   The Preservation of Personal Privacy Act Survives An As-Applied
          Challenge ................................................................................... 32

IV.   PLAINTIFF SUFFICIENTLY PLEADS A CLAIM UNDER THE PRESERVATION OF PERSONAL PRIVACY ACT ...................................................... 34

    A.    Hearst Is Engaged In The Business Of Selling At Retail ..................................... 34

    B.    Hearst Cannot Hide Behind The Preservation of Personal Privacy Act's Exclusively For Direct Marketing Defense .................................................... 36

        1.    Hearst's Exclusively For Direct Marketing Defense Cannot Be Adjudicated On A Motion To Dismiss ................................................. 38

        2.    Hearst's Disclosures Were Not Exclusively For Direct Marketing Purposes ........................................................................... 39

        3.    Hearst Did Not Provide Timely Or Adequate Notice Under The Preservation of Personal Privacy Act ................................................. 40

V.    PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR UNJUST ENRICHMENT ..................................................................................................... 42

    A.    Plaintiff's Unjust Enrichment Claim Is Not Solely Predicated On Hearst's Violation Of The Preservation of Personal Privacy Act ......................... 42

    B.    Plaintiff States A Claim For Unjust Enrichment On The Facts Alleged ............................................................................................................. 43

CONCLUSION ...................................................................................................... 46

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*832 Corp. v. Gloucester Twp.*,
　404 F. Supp. 2d 614, (D.N.J. 2005) ........................................................ 31

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
　760 F.3d 18 (D.C. Cir. 2014) .................................................................. 29

*American Cooper & Brass, Inc. v. Lake City Industrial Products, Inc.*,
　2010 WL 2998472 (W.D. Mich. July 28, 2010) ................................ 18, 23

*Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*,
　508 F.3d 94 (2d Cir. 2007) ..................................................................... 30

*Anderson v. Treadwell*,
　294 F.3d 453 (2d Cir. 2002) ................................................................... 26

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................. 5

*Austin-Spearman v. AMC Network Entertainment LLC*,
　2015 WL 1539052 (S.D.N.Y. Apr. 7, 2015) ............................................ 9

*Backhaut v. Apple Inc.*,
　2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ....................................... 18

*Barrett v. Armor Correctional Health, Inc.*,
　2014 WL 1220756 (E.D.N.Y. Mar. 20, 2014) ........................................ 39

*Bateman v. Am. Multi-Cinema, Inc.*,
　623 F.3d 708 (9th Cir. 2010) .................................................................. 35

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
　492 U.S. 469 (1989) ............................................................................... 31

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................. 5

*Bose v. Interclick, Inc.*,
　2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ........................................ 16

*Brache v. Cnty. of Westchester*,
　658 F.2d 47 (2d Cir. 1981) ..................................................................... 30

*Broadrick v. Okla.*,
　413 U.S. 601 (1973) ............................................................................... 30

*Cain v. Redbox Automated Retail, LLC*,
    981 F. Supp. 2d 674 (E.D. Mich. 2013) ............................................................ passim

*California Outdoor Equity Partners v. City of Corona*,
    2015 WL 4163346 (C.D. Cal. July 9, 2015) ............................................................ 28

*Carlsen v. GameStop, Inc.*,
    2015 WL 3538906 (D. Minn. June 4, 2015) ............................................................ 15

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ............................................................ 26, 31

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d. Cir. 2002) ............................................................ 37

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
    2015 WL 4365439 (N.D. Cal. July 16, 2015) ............................................................ 29

*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
    2015 WL 4571564 (N.D. Cal. July 28, 2015) ............................................................ 28

*Coulter-Owens v. Time, Inc.*,
    2015 WL 4527822 (E.D. Mich. July 27, 2015) ............................................. 1, 7, 44, 45

*Cowles v. Bank West*,
    719 N.W.2d 94 (Mich. 2006) ............................................................ 25

*Daniel v. Am. Bd. of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005) ............................................................ 35

*Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*,
    780 N.W.2d 272 (Mich. 2010) ............................................................ 42

*Deacon v. Pandora Media Inc.*,
    901 F. Supp. 2d 1166 (N.D. Cal. 2012) ............................................................ 2, 7, 12

*Delgado v. Ocwen Loan Servicing, LLC*,
    2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ............................................................ 40

*Doe 1 v. AOL, LLC.*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ............................................................ 15

*Donoghue v. Bulldog Investors Gen. P'ship.*,
    696 F.3d 170 (2d Cir. 2012) ............................................................ 5, 9, 10, 17

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985) ............................................................ 29

*Ebin v. Kangadis Food Inc.*,
   2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .......................................................................... 14

*Educ. Media Co. at Virginia Tech v. Insley*,
   731 F.3d 291 (4th Cir. 2013) ................................................................................................. 26

*Epstein v. JPMorgan Chase & Co.*,
   2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ........................................................................ 12

*Fish v. Home Depot USA, Inc.*,
   455 F. App'x 575 (6th Cir. 2012) .......................................................................................... 41

*Florida Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) ............................................................................................................... 26

*Fraiser v. Stanley Black & Decker, Inc.*,
   2015 WL 3794377 (D. Conn. June 15, 2015) ....................................................................... 24

*Friedman v. Rogers*,
   440 U.S. 1 (1979) .................................................................................................................. 26

*Gjoni v. Orsid Realty Corp.*,
   2015 WL 45570307 (S.D.N.Y. July 22, 2015) ...................................................................... 38

*Gold v. New York Life Ins. Co.*,
   730 F.3d 137, (2d Cir. 2013) ........................................................................................... 20, 22

*Goodman v. HTC Am., Inc.*,
   2012 WL 2412070 (W.D. Wash. June 26, 2012) ............................................................ 14, 16

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006) ................................................................................... 26

*Griffin v. Sec'y of Veterans Affairs*,
   288 F.3d 1309 (Fed. Cir. 2002) ....................................................................................... 30, 31

*Halaburda v. Bauer Pub. Co., LP*,
   2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ............................................................... passim

*Hanna v. Plumer*,
   380 U.S. 460 (1965) ............................................................................................................... 22

*Henry v. Dow Chemical Co.*,
   772 N.W.2d 301 (Mich. 2009) .............................................................................................. 25

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ................................................................................................. 38

*Hoerstman Gen. Contracting, Inc. v. Hahn*,
  711 N.W.2d 340 (Mich. 2006) ........................................................... 42

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013) ...................................................................... 13

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................... 14

*In re Acquisition of Land for Va. Park Neighborhood Dev. Program, Mich. A-4-2*,
  283 N.W.2d 771 (Mich. Ct. App. 1979) ....................................... 14, 15

*In re Google Privacy Policy Litig.*,
  2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ................................... 16

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ............................................... 16

*Iowa Public Employees' Retirement Sys. v. MF Global, Inc.*,
  620 F.3d 137 (2d Cir. 2010) .............................................................. 38

*Isom v. NE Lots LLC*,
  2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010) ............................. 45

*Karaus v. Bank of New York Mellon*,
  831 N.W.2d 897 (Mich. Ct. App. 2012) ............................................ 44

*Kinder v. Meredith Corp.*,
  2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) ......................... passim

*King v. Gen. Info. Svcs., Inc.*,
  903 F. Supp. 2d 303 (E.D. Pa. 2012) ........................................... 27, 29

*Leonard v. Abbott Labs., Inc.*,
  2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ........................................ 24

*Lifetree Trading PTE., LTD. v. Washakie Renewable Energy, LLC*,
  2015 WL 3948097 (S.D.N.Y. June 29, 2015) .................................... 37

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) .......................................................................... 11

*Lisk v. Lumber One Wood Preserving, LLC*,
  2015 WL 4139740 (11th Cir. July 10, 2015) ............................... 20, 23

*Lonner v. Simon Prop. Grp., Inc.*,
  57 A.D.3d 100 (2d Dep't 2008) ......................................................... 40

*Los Angeles Police Dep't v. United Reporting Pub. Corp.*,
528 U.S. 32 (1999) ................................................................................... 28

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................... 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................. 8, 11

*Lumber Mut. Ins. Co. v. Clarklift of Detroit, Inc.*,
569 N.W.2d 681 (Mich. Ct. App. 1997) .................................................. 41

*Lurie v. Wittner*,
228 F.3d 113 (2d Cir. 2000) .................................................................... 35

*MAI Sys. Corp. v. UIPS*,
856 F. Supp. 538 (N.D. Cal. 1994) .......................................................... 13

*Mangini v. R.J. Reynolds Tobacco Co.*,
793 F. Supp. 925 (N.D. Cal. 1992) .......................................................... 12

*Mass. v. E.P.A.*,
549 U.S. 497 (2007) ................................................................................... 8

*Melnarowicz v. Pierce & Assocs., P.C.*,
2015 WL 4910748 (N.D. Ill. Aug. 17, 2015) .......................................... 18

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*,
466 U.S. 789 (1984) ................................................................................. 30

*Murray v. Time Inc.*,
2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ........................................ 16

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d. Cir. 2013) ................................................................... 36

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) ................................................................................. 30

*Owens v. Rodale, Inc.*,
2015 WL 575004 (E.D. Mich. Feb. 11, 2015) ................................... passim

*Pfeil v. State Street Bank & Trust Co.*,
671 F.3d 585 (6th Cir. 2012) ................................................................... 39

*Phillips v. Phillip Morris Companies Inc.*,
290 F.R.D. 476 (N.D. Ohio 2013) ..................................................... 24, 25

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................................................ 10

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) ............................................................................. 28

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ........................................................... 14, 45

*Robins v. Spokeo, Inc.*,
   742 F.3d 409, 411 (9th Cir. 2014) ........................................................... 18

*Sash v. Zenk*,
   439 F.3d 61 (2d Cir. 2006) ...................................................................... 36

*Schwartz v. Schwartz*,
   2014 WL 6390316 (E.D.N.Y. Nov. 17, 2014) ....................................... 36

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
   559 U.S. 393 (2010) ......................................................................... passim

*Small v. Kmart Holding Corp.*,
   2013 WL 1157339 (E.D. Mich. Mar. 20, 2013) ............................ 18, 23, 29

*Sorrell v. IMS Health Inc.*,
   131 S. Ct. 2653 (2011) ............................................................. 25, 29, 32, 33

*Sterk v. Redbox Automated Retail, LLC*,
   770 F.3d 618 (7th Cir. 2014) ................................................................ 8, 18

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................ 11

*Tapia v. United States*,
   131 S. Ct. 2382 (2011) ............................................................................ 21

*Trans Union Corp. v. F.T.C.*,
   267 F.3d 1138 (D.C. Cir. 2001) .......................................................... 28, 32

*United Reporting Pub. Corp. v. Cal. Highway Patrol*,
   146 F.3d 1133 (9th Cir. 1998) ................................................................ 28

*United States v. Canal Barge Co., Inc.*,
   631 F.3d 347 (6th Cir. 2011) .................................................................. 36

*United States v. Edge Broad. Co.*,
   509 U.S. 418 (1993) ................................................................................ 25

*United States v. One Tyrannosaurus Bataar Skeleton*,
  2012 WL 5834899 (S.D.N.Y. Nov. 14, 2012) .......................................................... 38

*United States v. Painting Known and Described as Madonna and Child*,
  2015 WL 108416 (S.D.N.Y. Jan. 6, 2015) ......................................................... 5, 17

*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................................... 30

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) ............................................................................................... 10

*Vt. Agency of Natural Resources v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ................................................................................................. 8

*Wang v. OCZ Tech. Group, Inc.*,
  276 F.R.D. 618 (N.D. Cal. 2011) ........................................................................... 14

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................. 8

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ............................................................................................... 30

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ............................................................................................... 31

*Weisblum v. Prophase Labs, Inc.*,
  2015 WL 738112 (S.D.N.Y. Feb. 20, 2015) .................................................... 14, 21

*Whalen v. Roe*,
  429 U.S. 589 (1977) ............................................................................................... 32

*Wilson v. Kellogg Co.*,
  2015 WL 3937511 (E.D.N.Y. June 25, 2015) ....................................................... 37

*Zink v. First Niagara Bank, N.A.*,
  18 F. Supp. 3d 363 (W.D.N.Y. 2014) .................................................................... 22

**STATUTES**

Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711, *et seq*. .................... passim

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ................................................. 27

Video Privacy Protection Act, 18 U.S.C. § 2710.......................................................... 3

Class Action Fairness Act, 28 U.S.C. § 1332(d) .................................................................. 2, 21, 22

CPLR § 901 ........................................................................................................................... 19, 25

N.Y. Ins. Law § 5106 ................................................................................................................ 19

Michigan Uniform Commercial Code, M.C.L. § 440.1201(j) ..................................................... 41

## RULES

Fed. R. Civ. P. 23 ............................................................................................................... passim

Michigan Court Rule 3.501 .................................................................................................. passim

## TREATISES

David D. Siegel, *New York Practice* (5th ed. 2011) ..................................................................... 19

## LAW REVIEW ARTICLES

John G. Roberts, Jr., *Article III on Statutory Standing*, 42 Duke L.J. 1219 (1993) ........................ 9

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*,
17 Suffolk U. L. Rev. 881 (1983) ........................................................................................... 9

## INTRODUCTION

Defendant Hearst Communications, Inc.'s ("Hearst's") motion requires this Court to blind itself to the law.  Hearst's moving brief omits any mention of <u>four</u> recent opinions denying motions to dismiss in other cases concerning the Michigan Preservation of Personal Privacy Act – including an opinion in a consolidated putative class action case in which Hearst was a defendant.  *See Halaburda v. Bauer Pub. Co., LP*, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)[1]; *Kinder v. Meredith Corp.*, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014); *Owens v. Rodale, Inc.*, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013).  In all four cases, similar arguments to those raised here by Hearst were rejected.  To make matters worse, Hearst also falsely states that "no civil or criminal case has been brought against magazine publishers under the [Preservation of Personal Privacy Act] since its enactment."  Defendant Hearst Communications, Inc.'s Memorandum Of Law In Support Of Its Motion To Dismiss ("Def.'s Br.") at 35.[2]  But Hearst's false denials cannot help it avoid damaging legal authority.  As four previous decisions make clear, Plaintiff Suzanne Boelter ("Plaintiff") has standing to pursue her claims and sufficiently pleads claims for a violation of the Preservation of Personal Privacy Act and unjust enrichment.

---

[1] *Halaburda* was a consolidated opinion of three Michigan Preservation of Personal Privacy Act actions against magazine publishers, including *Grenke v. Hearst Communications, Inc.*, Case No. 12-14224 (E.D. Mich.).

[2] Five civil cases have been brought against magazine publishers for alleged violations of the Preservation of Personal Privacy Act before this one, including a case against Hearst.  All survived a motion to dismiss.  *See Grenke v. Hearst Communications, Inc.*, Case No. 12-cv-14221 (E.D. Mich.); *Halaburda v. Bauer Publ'g Co., LP*, Case No. 12-cv-12831 (E.D. Mich.); *Fox v. Time, Inc.*, Case No. 12-14390 (E.D. Mich.); *Kinder v. Meredith*, Case No. 14-cv-11284; *Owens v. Rodale*, 14-cv-12688 (E.D. Mich.).  *Halaburda* ultimately reached a class-wide settlement, which Judge Steeh granted final approval to in January 2015.  *See Halaburda*, Case No. 12-cv-12831, Dkt. No. 68.  In *Fox*, Judge Steeh recently granted plaintiffs' class certification motion.  *See Coulter-Owens v. Time, Inc.*, 2015 WL 4527822, at *12 (E.D. Mich. July 27, 2015).

1

Despite these decisions, Hearst asks the Court to dismiss this case for the following reasons, which other courts have already rejected.

<u>First</u>, Hearst again argues that Plaintiff lacks Article III standing because she does not allege an injury in fact.  Def.'s Br. at 7-14.  But as Judge Steeh held the first time Hearst made this argument, the Preservation of Personal Privacy Act's statutorily-defined damages award confers Article III standing.  *See Halaburda, LP*, 2013 WL 4012827, at *4, *6 ("[A] close reading of the VRPA reveals that it contains absolutely no language to require a claimant suffer any actual injury apart from a violation of the statute. … [A] statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information. The court finds that plaintiffs … have satisfied Article III standing requirements.").  Four other courts have agreed with Judge Steeh's interpretation.  *See, e.g.*, *Kinder*, 2014 WL 4209575, at *3 (same); *Owens*, 2015 WL 575004, at *4 (same); *Cain*, 981 F. Supp. 2d at 683 (same); *Deacon v. Pandora Media Inc.*, 901 F. Supp. 2d 1166, 1172 (N.D. Cal. 2012).  Despite Hearst's arguments to the contrary, the injury required by Article III can exist solely by virtue of statutes creating legal rights.  The Supreme Court, the Second Circuit, and other courts in this District all support this view.  And, even if this were not the case, Plaintiff alleges actual injury in the forms of overpayment and Hearst's retention of money received by selling her Personal Reading Information.

<u>Second</u>, Hearst argues that this Court lacks jurisdiction over Plaintiff's claim because a Michigan Court Rule precludes bringing claims for statutory damages in a class action in Michigan state court.  Def.'s Br. at 14-22.  But, Plaintiff brings her claim in federal court, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  As the Supreme Court, Eleventh

Circuit, and other district courts interpreting this Michigan Court Rule have stated, in federal court Rule 23 controls.

Third, Hearst argues that the Preservation of Personal Privacy Act violates the First Amendment's protection of freedom of speech. Def.'s Br. at 22-33. But the First Amendment's protections for commercial speech are considerably lower and do not prevent a State from passing reasonable laws to protect its citizen's privacy. Indeed, Judge Steeh has already rejected Hearst's First Amendment challenge. *See Halaburda, LP*, 2013 WL 4012827, at *7 (rejecting Hearst's argument "that a determination by the court that the act covers magazines will raise 'significant First Amendment issues'").

Finally, Hearst argues that Plaintiff fails to state a claim for violation of the Preservation of Personal Privacy Act or unjust enrichment, for the same reasons that were rejected by Judge Steeh and three other courts. Def.'s Br. at 33-42. Hearst provides no reason for this Court to decline to follow Judge Steeh's lead.

Plaintiff alleges facts that are simple, clear, and sufficient to state her claims. Hearst unlawfully discloses its subscribers' Personal Reading Information. On these facts, Judge Steeh denied Hearst's first motion to dismiss. On similar facts, three other courts denied defendants' motions to dismiss. This Court should also deny Hearst's motion.

## STATUTORY AND FACTUAL BACKGROUND

In November 1988, Congress enacted the Video Privacy Protection Act ("VPPA"), prohibiting the disclosure of video rental records. *See* 18 U.S.C. § 2710. At the same time, recognizing "that a person's choice in reading … is a private matter, and not a fit subject for consideration by gossipy publications," the Michigan Legislature enacted the Preservation of

Personal Privacy Act[3], M.C.L. §§ 445.1711, *et seq*.  Compl. Ex. A, *Privacy:  Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20 1989.  The Act states:

> [A] person, or any employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or **other written materials**, sound recordings, or video recordings **shall not disclose to any person**, other than the customer, **a record or information concerning the purchase**, lease, rental, or borrowing **of those materials by a customer that indicates the identity of the customer**.

M.C.L. § 445.1712 (emphasis added).  The Act defines a customer as "a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording." M.C.L. § 445.1711(a).

The Act further provides for a private right of action "to the customer identified in a record or other information that is disclosed in violation of this act."  M.C.L. § 445.1715.  The customer "may recover both of the following:  (a) Actual damages, including damages for emotional distress, or $5,000, whichever is greater [and] (b) Costs and reasonable attorney fees." *Id.*

Plaintiff is a Michigan citizen and a subscriber to Hearst's *Country Living* magazine.  *See* Class Action Complaint, Dkt. No. 1 ("Compl.") ¶ 7.  Plaintiff alleges that Hearst violated the Preservation of Personal Privacy Act by disclosing her Personal Reading Information – including, but not limited to, her name, magazine that she subscribed to, and home address – to third parties.  *Id.* ¶¶ 2, 5.  Plaintiff further alleges that Hearst was unjustly enriched by disclosing her information in that Hearst "sells its mailing lists – which include subscribers' Personal Reading Information identifying which individuals purchased which magazines … to data miners, other consumer-facing organizations, non-profit organizations seeking to raise awareness

---

[3] Hearst refers to the Preservation of Personal Privacy Act as the "Video Rental Privacy Act" or "VRPA."  Plaintiff will refer to the Act by its actual name throughout.

and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts." *Id.* ¶ 40.  Plaintiff also alleges that Hearst was unjustly enriched because its subscribers "were denied services that they paid for and were entitled to receive – i.e., confidentially of their Personal Reading Information" and because they "would have commanded a discount to voluntarily forego those benefits." *Id.* ¶ 82.  As such, "Hearst should return to Plaintiff and the Class the value they ascribe to confidentiality of their Personal Reading Information and all money derived from Hearst's sale and disclosure of Plaintiff's and the Class's Personal Reading Information." *Id.* ¶ 83.  "Plaintiff seeks to represent a class defined as all Michigan residents who had their Personal Reading Information disclosed to third parties by Hearst without consent." *Id.* ¶ 46.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint, accepted as true to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is not required to prove "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party." *United States v. Painting Known and Described as Madonna and Child*, 2015 WL 108416, at *3 (S.D.N.Y. Jan. 6, 2015).  The same standard applies for a Rule 12(b)(1) motion to dismiss. *See Donoghue v. Bulldog Investors Gen. P'ship.*, 696 F.3d 170, 173 (2d Cir. 2012) ("In conducting *de novo* review of the denial of a Rule 12(b)(1) motion to dismiss for lack of standing, we borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting all material factual allegations contained therein.").

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING TO ASSERT CLAIMS UNDER THE PRESERVATION OF PERSONAL PRIVACY ACT

#### A. Plaintiff Sufficiently Alleges A Violation Of The Preservation Of Personal Privacy Act, And Therefore Has Article III Standing To Pursue Her Claims

Hearst argues that because "Plaintiff has no concrete and particularized injury under the VRPA and cannot establish the constitutionally required injury in fact" she "lacks standing to sue under Article III." Def.'s Br. at 8. That is wrong. A violation of the Preservation of Personal Privacy Act is an injury in fact. The Preservation of Personal Privacy Act has no actual damages requirement. Rather, the Preservation of Personal Privacy Act provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following . . . (a) Actual damages, including damages for emotional distress, *or $5,000, whichever is greater* [plus] (b) Costs and reasonable attorney fees.

M.C.L. § 445.1715 (emphasis added). Indeed, Hearst's argument was already rejected by Judge Steeh in an earlier Preservation of Personal Privacy Act case in which it was a defendant. *See Halaburda*, 2013 WL 4012827, at *4, *6. In *Halaburda*, Hearst argued that the plaintiffs lacked "Article III standing because they [] alleged no concrete and particularized injury." *Id.* at *3. More specifically, Hearst argued that "plaintiffs, who ha[d] alleged only technical violations of Michigan's VRPA, clearly lack standing to bring these actions in federal court." *Id.* Judge Steeh rejected this argument, instead finding that:

> [A] close reading of the VRPA reveals that it contains absolutely no language to require a claimant suffer any actual injury apart from a violation of the statute. … [A] statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information. The court finds that plaintiffs … have satisfied Article III standing requirements.

6

*Id.* at *4, *6.  Four other courts have agreed with Judge Steeh's interpretation.  *See, e.g.*, *Kinder*, 2014 WL 4209575, at *3 ("Kinder has alleged that Meredith violated her rights pursuant to the VRPA by improperly disclosing and selling her personal information.  Taking her allegations as true, as this Court must on a motion to dismiss, the allegations would properly allege a violation of the VRPA.  Thus, Kinder has both statutory standing pursuant to VRPA and Article III standing."); *Cain*, 981 F. Supp. 2d at 683 ("Judge Steeh's discussion on Article III and statutory standing in *Halaburda* is well-reasoned and persuasive. … Here, as with in *Halaburda* … Plaintiffs have sufficiently alleged a violation of their statutory rights under the VRPA to trigger Article III standing."); *Deacon*, 901 F. Supp. 2d at 1172 ("Plaintiff has sufficiently alleged the disclosure of information governed by the VRPA.  Plaintiff alleges that Pandora disclosed his name and 'listening history,' i.e., a list of the songs he listed to on Pandora's radio service, to the general public. … [T]he disclosure of this information is sufficient to constitute an injury for purposes of Article III standing."); *Owens*, 2015 WL 575004, at *4 ("Under *Halaburda*, Coulter-Owens only needs to allege a violation of VRPA in order to have Article III standing.  She does this; she has Article III standing.").

Here, Plaintiff alleges that "Hearst had disclosed, and continues to disclose, without consent or prior notice, [her] Personal Reading Information to data mining companies including Insource and others, who then supplement that information with data from their own files.  Moreover, during that same period, Hearst has sold – and continues to sell and offer for sale – mailing lists containing [her] Personal Reading Information to third parties seeking to contact Hearst subscribers, without first obtaining [her] written consent or even giving her prior notice of the disclosure and sales."  Compl. ¶ 7.  Taking these allegations as true, Plaintiff has properly

alleged a violation of the Preservation of Personal Privacy Act, and therefore has Article III standing.

>    **B.**    **The Injury Required By Article III Can Exist Solely By Virtue Of Statutes Creating Legal Rights**

Hearst also argues "[t]he fact that a statute has authorized a plaintiff to sue by granting a right of action against the defendant [] does not, without more, satisfy the requirement of injury in fact." Def.'s Br. at 8. That is incorrect. The United States Supreme Court has held that "[t]he injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Mass. v. E.P.A.*, 549 U.S. 497, 516 (2007) ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."); *Vt. Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("This is not to suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) ("[T]he injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("Redbox characterizes plaintiffs' claim as an allegation that Redbox committed a 'mere technical violation' of the statute, which Redbox argues is insufficient to establish standing. But 'technical' violations of the statute (*i.e.*, impermissible disclosures of one's sensitive, personal information) are precisely what Congress sought to illegalize by enacting the VPPA. … By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."). Significant secondary authority also supports this view. *See, e.g.*, Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*,

17 Suffolk U. L. Rev. 881, 885 (1983) ("[L]egal injury is by definition no more than the

violation of a legal right; and legal rights can be created by the legislature … standing['s] …

existence in a given case is largely within the control of Congress."); John G. Roberts, Jr., *Article*

*III on Statutory Standing*, 42 Duke L.J. 1219, 1228 (1993) (stating that statutes may "elevate[]

injuries that were not previously legally cognizable to the status of legally enforceable rights").

Further, the Second Circuit expressly endorsed this view in *Donoghue v. Bulldog*

*Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012), a case that presents similar issues to the case

at hand.  In *Donoghue*, the Second Circuit found that allegations that the defendants violated

Section 16(b) of the Exchange Act were sufficient to confer standing.  *See id.* at 177, 179.

Specifically, the Second Circuit held that the Exchange Act "conferred upon [the issuer] an

enforceable legal right to expect [defendant] to refrain from engaging in any short-swing trading

in its stock.  The deprivation of this right establishes Article III standing."  *Id.* at 177.  The

Second Circuit further stated that "[w]hile this particular legal right might not have existed but

for the enactment of § 16(b), Congress's legislative authority to broaden the injuries than can

support constitutional standing is beyond dispute."  *Id.* at 179.  Here, by analogy, the

Preservation of Personal Privacy Act conferred upon Plaintiff an enforceable legal right to expect

Hearst to refrain from disclosing and/or selling her Personal Reading Information.  The

deprivation of this right establishes Article III standing.

*Austin-Spearman v. AMC Network Entertainment LLC*, 2015 WL 1539052 (S.D.N.Y.

Apr. 7, 2015) is particularly instructive.  There, the plaintiff brought a putative class action claim

against AMC for violation of the federal Video Privacy Protection Act.  *Id.* at *2.  AMC argued

that "a plaintiff seeking relief under a statute must plead an injury beyond the statutory violation

– i.e., in the context of the VPPA, harm resulting from disclosure rather than simply disclosure

itself – in order to have alleged a constitutionally cognizable injury." *Id.* at *3.  Judge Buchwald

rejected AMC's argument and stated that it "fundamentally underestimates Congress's ability to

confer standing through statutory enactment." *Id.*  Relying on *Donoghue*, Judge Buchwald held

"the Second Circuit does not as a rule require allegations of injury beyond statutory violation.  …

Thus, because the VPPA creates a specific right to relief for disclosures made in violation of the

statute, a plaintiff asserting claims under the VPPA need only assert that her information was

wrongfully disclosed to have asserted an 'injury in fact' supporting Article III standing." *Id.* at

*5.  Here, Plaintiff is alleging that Hearst violated the Preservation of Personal Privacy Act – the

counterpart of the VPPA.  *See* Compl. ¶ 7.  Therefore, Judge Buchwald's analysis in *Austin-*

*Spearman* is equally applicable in this case.

Hearst's cited cases in support of its position are inapposite.

First, *Raines v. Byrd*, 521 U.S. 811 (1997) is inapposite.

> [T]he issue in *Raines* was altogether different than that in this case.
> There, six members of the U.S. Congress whose votes on a
> particular law were in the minority, sought to invalidate a federal
> law as unconstitutional.  Plaintiffs in *Raines* were found to lack
> Article III standing for the reason that they had alleged only a
> 'wholly abstract and widely dispersed' institutional injury, and no
> individual injury.

*Halaburda*, 2013 WL 4012827, at *5 (quoting *Raines*, 521 U.S. at 829).  Here, by contrast, "a

statute was created by a state legislature to protect individual consumers from certain disclosures

of their personal information.  The court finds that plaintiffs … have satisfied Article III standing

requirements." *Id.*

Second, *Valley Forge Christian College v. Americans United for Separation of Church &*

*State, Inc.*, 454 U.S. 464 (1982) is inapposite.  In *Valley Forge* "respondents claim[ed] that the

Constitution ha[d] been violated, they claim[ed] nothing else.  They fail[ed] to identify any

personal injury suffered by them *as a consequence* of the alleged constitutional error." *Id.* at 485. They claimed "standing by reference to the Administrative Procedure Act, 5 U.S.C. § 702 … [but they] d[id] not allege that the Act creates a legal right, 'the invasion of which creates standing.'" *Id.* at 487 n.24 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973)). Here, by contrast, Plaintiff claims her statutory rights under the Preservation of Personal Privacy Act were violated by Hearst. *See, e.g.*, Compl. ¶ 7. As explained *supra*, a violation of the Preservation of Personal Privacy Act is sufficient to confer standing here. *See supra* Section I.A.

Third, *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) is inapposite. In *Summers*, a group of environmental organizations sought to "prevent the United States Forest Service from enforcing regulations that exempt small fire-rehabilitation and timber-salvage projects from the notice, comment, and appeal process used by the Forest Service for more significant land management decisions." *Id.* at 490. The Court held the environmental organizations lacked Article III standing because "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing." *Id.* at 496. Quoting from Justice Kennedy's concurring opinion in *Lujan*, the Court explained that "'the party bringing suit must show that the action injures him in a concrete and personal way.'" *Id.* at 497 (quoting *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring)). Thus, the *Summers* Court's holding was predicated on the fact that the respondents sought to enforce a statute based on harm caused to another, not themselves. That is not the case here. Plaintiff alleges that her statutory rights under the Preservation of Personal Privacy Act were violated. *See, e.g.*, Compl. ¶ 7. She therefore has been injured in a concrete and personal way.

Hearst also argues that the "Michigan Legislature did not and could not have created Article III standing by recognizing a new right under the VPRA." Def.'s Br. at 10. But, as

discussed *supra*, every court that has considered whether the VRPA's statutorily-defined damages award confers Article III standing has held that it does.  *See, e.g.*, *Halaburda*, 2013 WL 4012827, at *4, *6 ("[A] close reading of the VRPA reveals that it contains absolutely no language to require a claimant suffer any actual injury apart from a violation of the statute.  … [A] statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information.  The court finds that plaintiffs … have satisfied Article III standing requirements."); *Kinder*, 2014 WL 4209575, at *2 (same); *Cain*, 981 F. Supp. 2d at 683 (same); *Deacon*, 901 F. Supp. 2d at 1172 (same); *Owens*, 2015 WL 575004, at *4 (same).  Tellingly, Hearst makes no attempt to explain the inconsistency between its position and the holdings in these cases.

Moreover, Plaintiff sufficiently alleges economic loss in the forms of overpayment and retention of money received by selling her Personal Reading Information.  *See, e.g.*, Compl. ¶ 7 ("Because Plaintiff Boelter is entitled by law to privacy in her Personal Reading Information, and because she paid money for her subscription, Hearst's sale of her Personal Reading Information deprived Plaintiff Boelter of the full set of benefits to which she was entitled as a part of her *Country Living* subscription, thereby causing economic harm."); *id.* ¶ 83 ("To prevent inequity, Hearst should return to Plaintiff and the Class the value they ascribe to their confidentiality of their Personal Reading Information and all money derived from Hearst's sale and disclosure of Plaintiff's and the Class's Personal Reading Information.").  That fact distinguishes two of Hearst's cited cases.  *Cf. Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928-30 (N.D. Cal. 1992) (no economic injury alleged); *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014) ("That Plaintiff received the Refund

Check demonstrates the absence of any 'actual' injury on which Plaintiff's standing could be established.").

Hearst's other two cited cases on this point are distinguishable because each held that a plaintiff may not assert a claim for a "generalized grievance." *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) ("[T]he fact that a State thinks a private party should have standing to seek relief for a *generalized grievance* cannot override our settled law to the contrary."); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 541 (N.D. Cal. 1994) ("[D]efendants theory of actual injury does not rise to the level of 'distinct and palpable' harm required for Article III justifiability.  Defendants do not specifically allege any injury to themselves in their pleadings."). Here, Plaintiff plainly alleges injury to herself, not a generalized grievance. *See, e.g.*, Compl. ¶ 7.

### C.      Although Not Required, Plaintiff Sufficiently Alleges Economic Loss

Hearst also argues that the "Complaint does not set forth any plausible theory of actual damages from the alleged disclosure that Plaintiff purchased a *Country Living* subscription, both as a matter of law and as alleged."  Def.'s Br. at 10.  That is wrong.  Plaintiff sets forth well-recognized theories of actual damages in the forms of overpayment and retention of money received by selling her Personal Reading Information.  *See, e.g.*, Compl. ¶ 7 ("Because Plaintiff Boelter is entitled by law to privacy in her Personal Reading Information, and because she paid money for her subscription, Hearst's sale of her Personal Reading Information deprived Plaintiff Boelter of the full set of benefits to which she was entitled as a part of her *Country Living* subscription, thereby causing economic harm."); *id.* ¶ 83 ("To prevent inequity, Hearst should return to Plaintiff and the Class the value they ascribe to their confidentiality of their Personal Reading Information and all money derived from Hearst's sale and disclosure of Plaintiff's and the Class's Personal Reading Information.").

Allegations of overpayment are sufficient to constitute economic harm.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) ("[T]he injury is the purchase price."); *Weisblum v. Prophase Labs, Inc.*, 2015 WL 738112, at *7 (S.D.N.Y. Feb. 20, 2015) (finding plaintiff had standing where "the Complaint asserts that Weisblum was 'damaged in the amount of the purchase price of the Cold-EEZE Products, i.e., *the difference in value* between the Cold-EEZE Products as advertised and the Cold-EEZE Products as actually sold'"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 453-54 (E.D.N.Y. 2013) ("[P]laintiffs state that they purchased Ester-C based on its representations as to immune support, and that had they known the truth that the statements they relied on were false, misleading, deceptive, and unfair they would not have purchased Ester-C or paid the premium price … for the Ester-C they bought.") (internal quotations omitted); *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *5 (W.D. Wash. June 26, 2012) ("Plaintiffs' assertion that they overpaid for their smartphones meets the threshold for injury in fact because [they] allege that they would have paid less for the phones had Defendants not misrepresented the relevant features of the phones [namely] … inadequate disclosures about the privacy and security defects complained of herein."); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011) (Plaintiff overpaid and suffered economic loss because Defendant's "conduct caused him either to buy a product that he would not have bought, or to buy a product that was inferior, of lower quality and less value, than that offered.").

Allegations of unjust retention of monies are also sufficient to constitute economic harm. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where Plaintiff alleged she did not receive paid-for data security protections); *In re Acquisition of Land for Va. Park Neighborhood Dev. Program, Mich. A-4-2*, 283 N.W.2d 771, 773 (Mich. Ct. App. 1979) ("Where there has been a defective performance of a contract the measure of

14

damages may be the difference in value of the objection of the performance in its defective condition and what its value would have been if the contract had been properly performed.").

Here, Plaintiff alleges that she paid money for her Hearst subscription, *see* Compl. ¶¶ 7, 69, 76, which entitled her to privacy in her subscription records. *Id.* ¶¶ 7, 69, 78, 82. So her theory goes, Hearst's unlawful disclosures prevented Plaintiff from receiving the full benefit of those privacy protections. *Id.* ¶¶ 7, 69-71, 81-83. Moreover, Plaintiff alleges that Hearst profited from its unlawful disclosures at her expense. *Id.* ¶¶ 7, 67, 83, 84. Thus, Plaintiff alleged economic harm and she did not receive the full benefit of the bargain she paid for. *See In re Acquisition of Land*, 283 N.W. 2d at 773; *see also Doe 1 v. AOL, LLC*., 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding economic harm where "disclosure of [Class's] undeniably sensitive information is not something that [they] bargained for when they signed up and paid fees for [Defendant's] service").

The cases Hearst cites do not reject Plaintiff's injury. Hearst relies on *Carlsen v. GameStop, Inc.*, 2015 WL 3538906 (D. Minn. June 4, 2015), but Hearst misconstrues the *Carlsen* holding. *Carlsen* did not hold that allegations of overpayment are always insufficient to confer standing. Rather, *Carlsen* centered on the fact that the plaintiff could not "establish that the lack of data privacy/security constituted injury because Plaintiff did not bargain for data privacy/security." *Id.* at *6. In fact, the privacy policy that plaintiff Carlsen alleged was violated applied to "all [non-paying] visitors as well as enhanced content, [etc.] for [paying] registered users." *Id.* Because the privacy policy at issue applied to non-paying website visitors, as well as registered users, it could not have been part of the basis of the bargain. Here, by contrast, the Preservation of Personal Privacy Act only applies to "customers," and therefore is a part of the basis of the bargain. *See* M.C.L. § 445.1712.

15

Hearst also relies on *In re Google Privacy Policy Litig.*, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012), *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012), *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *7 (W.D. Wash. June 26, 2012), and *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4-6 (S.D.N.Y. Aug. 17, 2011) to assert that Personal Reading Information does not have monetary value.  Those cases are all distinguishable because none of them involved a statute that ascribed legal protections to Personal Reading Information. For instance, *Low* found that "a plaintiff's 'personal information' does not constitute property." *Low*, 900 F. Supp. 2d at 1030.  But, Plaintiff's theory is that her subscription was entitled to privacy protections by law, which Hearst failed to provide, and then consequently profited from its failure.

Hearst finally relies on *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d. 299 (E.D.N.Y. 2005) and *Murray v. Time Inc.*, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) to assert that Plaintiff could not have suffered damages as a result of its unlawful disclosures.  Def.'s Br. at 11.  But neither of these cases hold that privacy compliance has no value in a transaction.  In fact, *JetBlue* recognizes that privacy can form part of the basis of the bargain.  *See In re JetBlue*, 379 F. Supp. 2d at 327 (noting that plaintiffs "may well have expected that in return for providing their personal information to JetBlue and paying the purchase price, they would obtain a ticker for air travel and the promise that their personal information would be safeguarded consistent with the terms of the privacy policy").  And, *Murray* dismissed the plaintiff's case on the ground that he failed to "connect the[] general allegations to facts relating to the value of *his* personal information," not that privacy compliance has no value at all.  *See Murray*, 2012 WL 3634387, at *4.

Hearst also argues that Plaintiff's theory of actual damages is "factually untenable." Def.'s Br. at 12.  However, such an inquiry is inappropriate on a motion to dismiss.  "A district court considering a Rule 12(b)(6) [or Rule 12(b)(1)] motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party."  *United States v. Painting Known and Described as Madonna and Child*, 2015 WL 108416, at *3 (S.D.N.Y. Jan. 6, 2015); *see also Donoghue*, 696 F.3d at 173 ("In conducting *de novo* review of the denial of a Rule 12(b)(1) motion to dismiss for lack of standing, we borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting all material factual allegations contained therein.").

Further, Hearst's argument that Plaintiff's theory of actual injury "is implausible given both the VRPA's *permissive* disclosures for marketing purposes, and *Country Living*'s own disclosures" is likewise inappropriate on a motion to dismiss.  Plaintiff alleges that she "never authorized Hearst" to disclose her Personal Reading Information and that she "was never provided any written notice that Hearst sells its customers' Personal Reading Information, or any means of opting out."  Compl. ¶ 7.  That is sufficient at this stage.  *See, e.g.*, *Halaburda*, 2013 WL 4012827, at *8 ("As plaintiffs argue, they have alleged the unlawful disclosure of personal reading information without notice or consent.  The court finds nothing more required at this juncture.").

Nonetheless, Plaintiff's theory is factually tenable.  Plaintiff did, in fact, pay money for her Hearst subscription.  *See* Compl. ¶¶ 7, 69, 76.  Michigan law does, in fact, afford her statutory privacy protections of her Personal Reading Information.  *See* M.C.L. § 445.1712.  It is therefore plausible that "a portion of the purchase price of each Hearst magazine subscription sold to Plaintiff and the other Class members was intended to ensure the confidentiality of

Plaintiff's and the other Class members' Personal Reading Information, as required by the VRPA." Compl. ¶ 82.[4]

## II.   PLAINTIFF MAY ASSERT HER CLAIMS IN FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT

### A.   Rule 23, Not Michigan Court Rule 3.501, Controls And Plaintiff May Therefore Pursue Statutory Damages

Hearst argues that Michigan Court Rule ("M.C.R.") 3.501 precludes "an action for the recovery of a statutory minimum … as a class action." Def.'s Br. at 15. However, M.C.R. 3.501 is procedural, and does not apply in Federal Court. *See American Cooper & Brass, Inc. v. Lake City Industrial Products, Inc.*, 2010 WL 2998472, at *3 (W.D. Mich. July 28, 2010), *aff'd* 757 F.3d 540 (6th Cir. 2014) (rejecting defendant's argument that M.C.R. 3.501(A)(5) is substantive law); *Small v. Kmart Holding Corp.*, 2013 WL 1157339, at *3 (E.D. Mich. Mar. 20, 2013) ("The Court … is required to apply Rule 23 to determine whether the action may be maintained as a class, notwithstanding the existence of Rule 3.501.  Rule 23 regulates procedure irrespective of its effect on state created rights.  The Court finds that Rule 3.501 is not a bar to this action.").

---

[4] Hearst argues in the alternative that the Court "should stay the action pending the outcome of … *Spokeo v. Robins*, No. 13-1339 (U.S.)" because in *Spokeo* the Court "will decide whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm." Def.'s Br. at 13 n.9. But *Spokeo* is not dispositive, regardless of its outcome.  In *Spokeo*, unlike here, the plaintiff did not allege economic harm.  His only bases for standing were statutory injury, and "harm to his employment prospects or related anxiety." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 411, 414 n.3 (9th Cir. 2014). Here, by contrast, Plaintiff has alleged economic injury as an alternative basis for standing. *See supra* Section I.C. Thus, a stay pending the outcome of *Spokeo* would needlessly prolong the duration of this case.  Moreover, other courts have recently declined to stay cases pending the outcome of *Spokeo*. *See, e.g.*, *Melnarowicz v. Pierce & Assocs., P.C.*, 2015 WL 4910748, at *2 (N.D. Ill. Aug. 17, 2015) ("If the Supreme Court answers this question in Spokeo's favor, then the opinion might well overrule *Sterk*.  But, if and until that day, this Court must follow the current rule in this Circuit."); *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *6 (N.D. Cal. Aug. 13, 2015) ("The Court is aware that the United States Supreme Court has granted certiorari in *Spokeo, Inc. v. Robins* … and that *Spokeo* may address whether the actual injury requirement of Article III can be satisfied solely by a defendant's invasion of a statutory legal right.  In the absence of a contrary decision from the United States Supreme Court, however, the Court concludes that Defendant's alleged violation of the Wiretap Act is sufficient to satisfy the injury-in-fact requirement of Article III standing.").

The Supreme Court addressed a similar issue in *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393 (2010).  There, the Court was tasked with determining whether an action under New York substantive law could be maintained in federal court as a class action under Rule 23 even though a CPLR provision (which is nearly identical to M.C.R. 3.501(A)(5)) provided that it could not be maintained as a class action in New York state courts.  *See id.* at 397-98.  The Court held that Rule 23, not the CPLR provision, applied in a federal diversity suit.  *See id.* at 401 ("Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements.").

The statutes at issue in *Shady Grove* were similar to those at issue here.  *Shady Grove* concerned N.Y. Ins. Law § 5106(a) and CPLR § 901(b).  *See Shady Grove*, 559 U.S. at 397. N.Y. Ins. Law. § 5106(a) provides for statutory interest of "two percent per month."  N.Y. Ins. Law. § 5106(a).  CPLR § 901(b) states "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."  CPLR § 901(b).  N.Y. Ins. Law § 5106(a) was enacted in 1984.  *See* N.Y. Ins. Law § 5106 (McKinney's 1984).  CPLR § 901 was enacted in 1975.  *See* CPLR § 901 (McKinney's 1975); David D. Siegel, *New York Practice* at 251 (5th ed. 2011).[5] Thus, the New York Legislature was "well aware that if it wanted to allow [New York] residents to recover statutory damages … on a class basis, it would need to specifically authorize such recovery in the text of the statute."  Def.'s Br. at 16.  Despite this, "all five justices [in *Shady Grove*] agreed that applying Rule 23 to allow a class action for a statutory penalty created by

---

[5] Hearst falsely states "the New York statutory provision at issue in *Shady Grove* did not post-date the New York CPLR's bar on class actions."  Def.'s Br. at 21.

New York law did not abridge, enlarge, or modify a substantive right; Rule 23 controlled." *Lisk v. Lumber One Wood Preserving, LLC*, 2015 WL 4139740, at *4 (11th Cir. July 10, 2015).  And, "because federal law and not state procedural law governs class actions in federal court, New York law's prohibition on awarding statutory penalties in class actions [is] inapplicable to suits in federal court." *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 140 n.1 (2d Cir. 2013).

Likewise, the Preservation of Personal Privacy Act was enacted after M.C.R. 3.501(A)(5) and provides for statutory damages of $5,000, *see* M.C.L. § 445.1715.  Further, M.C.R. 3.501(A)(5) provides "[a]n action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action."  M.C.R. 3.501(A)(5).  Thus, the issue is identical to that faced by the Supreme Court in *Shady Grove* and Rule 23 controls.

The Eleventh Circuit recently addressed a similar issue in *Lisk*.  *Lisk*, 2015 WL 4139740.  There, the Court considered whether an Alabama statute that provided "a private right of action in favor of a consumer against a person who violates the statute" but also provided that "only the Alabama Attorney General or a district attorney may bring a class action," precluded a Rule 23 class action in federal court.  *Id.* at *2-3.  The Eleventh Circuit opined that *Shady Grove* held "[a] state statute precluding class actions for specific kinds of claims conflicts with Rule 23 and so is displaced for claims in federal court."  *Id.* at *3.  Applying that rule, the Court concluded that "[t]he Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court.  Rule 23 controls."  *Id.* at *5.

Moreover, Judge Steeh recently certified a Rule 23(b)(3) class against a different magazine publisher for alleged violations of the Preservation of Personal Privacy Act.  *See*

*Coulter-Owens v. Time, Inc.*, 2015 WL 4527822, at *12 (E.D. Mich. July 27, 2015).
Accordingly, Rule 23 applies to Plaintiff's claims, and Plaintiff may bring a class action to
recover statutory damages under the Preservation of Personal Privacy Act.

> **B.      CAFA Confers Jurisdiction Over Plaintiff's Claims**

Hearst argues that "[t]he context of CAFA and its legislative history make plain that a
CAFA 'class action' was never intended to – and does not – include a case that could not have
been initiated as a class action in state court first." Def.'s Br. at 17.  That is wrong.  The text of
CAFA refutes Hearst's argument.  CAFA provides, "the term 'class action' means **any** civil
action **filed under rule 23 of the Federal Rules of Civil Procedure** or similar State statute or
rule of judicial procedure authorizing an action to be brought by 1 or more representative persons
as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  CAFA's text is crystal clear –
"the term 'class action' means **any** civil action **filed under rule 23 of the Federal Rules of
Civil Procedure**," – the Court's inquiry into the definition of a 'class action' under CAFA
should end there.  28 U.S.C. § 1332(d)(1)(B) (emphasis added); *Tapia v. United States*, 131 S.
Ct. 2382, 2388 (2011) ("Our consideration of Tapia's claim starts with the text … and given the
clarity of th[e] provision's language, could end there as well."); *see also Weisblum v. Prophase
Labs, Inc.*, 2015 WL 738112, at *8 (S.D.N.Y. Feb. 20, 2015) (noting that "'class action' is
expansively defined" by CAFA).  Federal Rule of Civil Procedure 23 does not limit itself to class
actions that could have been initiated as a class action in state court first.  *See* Fed. R. Civ. P. 23.
Hearst's argument is therefore wrong, and the Court can end its inquiry on this ground alone.

Nonetheless, if the Court finds the text of CAFA is ambiguous, Hearst's argument is still
wrong because it was rejected in *Shady Grove*.  While Hearst attempts to distinguish *Shady
Grove* on the ground that it "did not consider what a 'class action' is under CAFA," its
distinction is without meaning.  Def.'s Br. at 17 n.11.  In *Shady Grove*, the plaintiff "asserted

jurisdiction under 28 U.S.C. § 1332(d)(2) [CAFA]." *Shady Grove*, 559 U.S. at 397 n.3.  That did

not affect the Court's holding that "Rule 23 permits all class actions that meet its requirements,

and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and

enacting another part that imposes additional requirements." *Id.* at 401.  Moreover, Justice

Scalia addressed Hearst's (and the *Shady Grove* dissent's) argument that "'Congress surely never

anticipated that CAFA would make federal courts a mecca for … class actions seeking state-

centered penalties for claims arising under state law … that would be barred from class treatment

in the State's own courts.'"  Def.'s Br. at 17 (quoting *Shady Grove*, 559 U.S. at 459 (Ginsberg,

J., dissenting)).  As Justice Scalia stated:

> [D]ivergence from state law, with the attendant consequence of
> forum shopping, is the inevitable (indeed, one might say the
> intended) result of a uniform system of federal procedure.
> Congress itself has created the possibility that the same case may
> follow a different course if filed in federal instead of state court.
> …  The short of the matter is that a Federal Rule governing
> procedure is valid whether or not it alters the outcome of a case in
> a way that induces forum shopping.  To hold otherwise would be
> to 'disembowel either the Constitution's grant of power over
> federal procedure,' or Congress's exercise of it.

*Shady Grove*, 559 U.S. at 416 (quoting *Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965)).  Stated

otherwise, Hearst's "argument that [Plaintiff] could not have brought this class action suit in

[Michigan] State court," is "not persuas[ive]."  *Zink v. First Niagara Bank, N.A.*, 18 F. Supp. 3d

363, 373 (W.D.N.Y. 2014).  "[B]ecause federal law and not state procedural law governs class

actions in federal court, [Michigan's] prohibition on awarding statutory penalties in class actions

[is] inapplicable to suits in federal court."  *Gold*, 730 F.3d at 141 n.1.[6]

---

[6] Justice Ginsberg even recognized that *Shady Grove* allows for plaintiffs to bring state law
claims as class actions in federal court even when they would be prohibited from doing so in
state court.  *Shady Grove*, 559 U.S. at 459 (Ginsberg, J., dissenting) (discussing *Shady Grove*'s
interaction with CAFA).  But, as Justice Ginsberg stated "[i]t remains open to Congress, of
course, to exclude from federal-court jurisdiction under the Class Action Fairness Act … claims

### C.        Michigan Court Rule 3.501 Is Procedural, Not Substantive

Hearst argues that "Michigan's bar on class actions for statutory damages is incorporated into the VRPA and is a matter of state substantive law." Def.'s Br. at 20. Specifically, Hearst contends that the bar on class actions for statutory damages is substantive because "the Michigan Legislature was well aware that if it wanted to allow Michigan residents to recover statutory damages under the VRPA on a class basis, it would need to specifically authorize such recovery in the text of the statute." Def.'s Br. at 16. But Hearst's argument ignores the facts in *Shady Grove*. In *Shady Grove*, on similar facts, "all five justices agreed that applying Rule 23 to allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a substantive right; Rule 23 controlled." *Lisk*, 2015 WL 4139740, at *4. As discussed above, the statutes at issue in *Shady Grove* were similar to those at issue here. *See supra* at Section II.A. Thus, the issue is identical to that faced by the Supreme Court in *Shady Grove* and Rule 23 controls.

Moreover, Hearst's exact argument was rejected by Judge Quist of the Western District of Michigan and Judge Hood of the Eastern District of Michigan. *See American Cooper & Brass, Inc. v. Lake City Industrial Products, Inc.*, 2010 WL 2998472 (W.D. Mich. July 28, 2010) (Quist, J.), *aff'd* 757 F.3d 540 (6th Cir. 2014); *Small v. Kmart Holding Corp.*, 2013 WL 1157339 (E.D. Mich. Mar. 20, 2013) (Hood, J.). In *American Cooper*, the defendant argued that the plaintiff's "TCPA claim c[ould not] be maintained as a class action because federal courts sitting in diversity must apply state substantive law, and a Michigan court rule prohibits this type of class action." *Id.* at *2 (citing M.C.R. 3.501(A)(5)). Judge Quist rejected the defendant's argument that M.C.R. 3.501(A)(5) was state substantive law, and stated, "[i]n *Shady Grove* …

---

that could not be maintained as a class action in state court." *Id.* at n.15. Unless and until Congress does so, *Shady Grove* controls this issue.

the Supreme Court analyzed a New York statute with language similar to M.C.R. 3.501(A)(5) and rejected the analysis [defendant] urges upon this Court. … Rule 23 is 'valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights.'" *Id.* at *3 (quoting *Shady Grove*, 559 U.S. at 410). The Sixth Circuit affirmed Judge Quist's holding. *See American Cooper & Brass, Inc.*, 757 F.3d at 546 ("We agree with the district court's conclusion that M.C.R. 3.501(A)(5) does not apply in this case."). In *Small*, the defendant argued that M.C.R. 3.501(A)(5) precluded the plaintiff from maintaining a class action for statutory damages under the TCPA. *See Small*, 2013 WL 1157339, at *2-3. Judge Hood rejected the defendant's argument and held "[t]he Court … is required to apply Rule 23 to determine whether the action may be maintained as a class, notwithstanding the existence of Rule 3.501. Rule 23 regulates procedure irrespective of its effect on state created rights. The Court finds that Rule 3.501 is not a bar to this action." *Id.* at *3.

Hearst's cited cases on this point are inapposite because each concerned statutes that other courts had interpreted as substantive. *See Fraiser v. Stanley Black & Decker, Inc.*, 2015 WL 3794377, at *6 (D. Conn. June 15, 2015) ("As another session of this Court has recently pointed out, while the Second Circuit has yet to provide authority as to whether the class action restrictions in CUTPA are substantive or procedural, other courts have determined similar statutes to be substantive.") (internal quotations omitted); *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *13 (E.D.N.Y. Mar. 5, 2012) ("[E]very court in Ohio to address this issue has held that section 1345.09(B) is substantive in nature and therefore not preempted by Rule 23."); *Phillips v. Phillip Morris Companies Inc.*, 290 F.R.D. 476, 480 (N.D. Ohio 2013) ("Applying such an analysis, courts have upheld similar state laws that restrict, in one fashion or another, the

24

availability of class actions.").[7]  Here, by contrast, five justices in *Shady Grove* found that CPLR § 901(b), a statute nearly identical to M.C.R. 3.501(A)(5), was procedural.  Further, Judges Quist and Hood held, and the Sixth Circuit affirmed, that M.C.R. 3.501(A)(5) was procedural.  Thus, Hearst's cited cases are inapposite.

## III.   THE PRESERVATION OF PERSONAL PRIVACY ACT DOES NOT VIOLATE THE FIRST AMENDMENT

Hearst argues that "[t]he Michigan VRPA cannot survive" because it is subject to "strict constitutional scrutiny under the First Amendment."  Def.'s Br. at 23.  That is incorrect.  In fact, the speech restricted under the Preservation of Personal Privacy Act is commercial speech subject only to intermediate scrutiny.  *See infra* III.A.  In addition, the Preservation of Personal Privacy Act does not present the kind of real and substantial restrictions on speech needed to justify a facial challenge and it withstands an as-applied challenge because it is narrowly tailored to directly advance the substantial government interest in protecting consumer privacy.  *See infra* III.B-C.

### A.   Intermediate Scrutiny Applies To Restrictions On Commercial Speech

It is firmly established that the Constitution "affords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993); *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2663 (2011) ("the

---

[7] *Phillips* is distinguishable on another ground as well.  In *Phillips*, the statute at issue was "limited to actions under the [Ohio Consumer Sales Practices Act]" thereby suggesting "it was not merely intended by the state legislature to function as a procedural rule to govern class actions."  *Phillips*, 290 F.R.D. at 481.  By contrast, M.C.R. 3.501 applies to all class actions brought in Michigan courts, including those based on federal law or the laws of other states.  *See Henry v. Dow Chemical Co.*, 772 N.W.2d 301, 303 (Mich. 2009) ("Class action litigation in Michigan is governed by the Michigan Court Rules."); *Cowles v. Bank West*, 719 N.W.2d 94, 101-103 (Mich. 2006) (applying M.C.R. 3.501 to class action under the federal Truth In Lending Act).  Thus, it is "hard to see how [M.C.R. 3.501] could be understood as a rule that, though procedural in form, serves the function of defining [Michigan's] rights or remedies."  *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring).

government's legitimate interest in protecting consumers from commercial harms explains why commercial speech can be subject to greater governmental regulation than noncommercial speech").

"[F]or commercial speech to merit any First Amendment protection, it must concern lawful activity and not be misleading." *Anderson v. Treadwell*, 294 F.3d 453, 461 (2d Cir. 2002) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)). Once it has been established that the commercial speech is entitled to protection, any government restriction on that speech must satisfy a three-part test: (1) the restriction must seek to further a substantial government interest, (2) the restriction must directly advance the government's interest, and (3) the restriction must reach no further than necessary to accomplish the given objective. *Cent. Hudson*, 447 U.S. at 563-66; *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) ("[W]e engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in *Central Hudson*."). The precedent of *Central Hudson* applies to both facial and as-applied challenges to restrictions on commercial speech. *See Educ. Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013) ("*Central Hudson* applies to both facial and as-applied challenges.").

All speech subject to the Preservation of Personal Privacy Act, including the speech at issue in this case, is commercial speech. "In determining whether speech is commercial, the Court considers three factors: (1) whether the communication is an advertisement, (2) whether the communication refers to a specific product or service, and (3) whether the speaker has an economic motivation for the speech." *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 326 (S.D.N.Y. 2006); *Friedman v. Rogers*, 440 U.S. 1, 10 n.9 (1979) ("By definition, commercial speech is linked inextricably to commercial activity."); *Cent. Hudson*, 447 U.S. at

26

561 (defining commercial speech as "expression related solely to the economic interests of the speaker and its audience").  The Preservation of Personal Privacy Act only limits speech "concerning the purchase, lease, rental, or borrowing" of "books or other written materials, sound recordings, or video recordings."  M.C.L. § 445.1712.  Accordingly, all of the speech limited by the Preservation of Personal Privacy Act necessarily "refers to a specific product." Here, for instance, all of the information sold by Hearst expressly lists specific products (Hearst publications) purchased by consumers.  All of the information constituting the speech restricted under the Preservation of Personal Privacy Act, moreover, is obtained through commercial transactions (magazine subscriptions) and is thus "linked inextricably to commercial activity." *Friedman*, 440 U.S. at 10 n.9.

In nearly all instances, including this case, the speech restricted by the Preservation of Personal Privacy Act is also economically motivated.  As set out in the Complaint, Hearst's speech constitutes the selling of subscribers' "Personal Reading Information," and other personal data.  *See* Compl. ¶¶ 2, 39-45.  For example, Hearst offers "a customer list with the names and addresses of all *Good Housekeeping* subscribers over age 50, who are devoted Bible-reading Democrats, with three teenage children and pet cats" for "$192 per thousand subscribers listed." *Id.* ¶ 3.

Courts that have addressed similar restrictions on disseminating consumer information have uniformly assessed those restrictions as commercial speech.  In *King v. Gen. Info. Svcs., Inc.*, 903 F. Supp. 2d 303 (E.D. Pa. 2012), for instance, a consumer reporting agency who sold consumer reports to businesses investigating potential employees challenged provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FRCA") limiting the types of information that it could disseminate.  In upholding the FRCA's limits, the *King* court ruled that "[t]he

27

appropriate test for analyzing the reduced First Amendment protection accorded to consumer report information is the Supreme Court's commercial speech doctrine." *King*, 903 F. Supp. 2d at 307; *Trans Union Corp. v. F.T.C.*, 267 F.3d 1138, 1141 (D.C. Cir. 2001) (FTC's restrictions on the sale of consumer reports was commercial speech subject to intermediate scrutiny). Similarly, in *United Reporting Pub. Corp. v. Cal. Highway Patrol*, 146 F.3d 1133 (9th Cir. 1998) *rev'd on other grounds sub nom. Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999), the Ninth Circuit held that selling information about recent arrestees to attorneys and others seeking new clients qualified as commercial speech that should be assessed under the *Central Hudson* framework. *Id.* at 1137 ("United Reporting sells arrestee information to clients; nothing more. … This is a pure economic transaction … comfortably within the core notion of commercial speech.") (internal quotations and citations omitted). The sale of consumer data here is no different. The data being sold contains information about subscribers' economic activity and defendant sells that data for its own economic gain. These sales thus have all the hallmarks of commercial speech.

    None of the cases cited by Hearst call these principles into question. Hearst cites *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), for the proposition that strict scrutiny should apply to the Preservation of Personal Privacy Act because its restrictions are content- and speaker-based. "However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test." *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015); *California Outdoor Equity Partners v. City of Corona*, 2015 WL 4163346, at *10 (C.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech . . . .  The fact that *Reed* has no bearing on this case is abundantly

clear from the fact that *Reed* does not even *cite Central Hudson*, let alone apply it.") (emphasis in original); *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 2015 WL 4365439, at *13 (N.D. Cal. July 16, 2015) (confirming that, despite the Supreme Court's ruling in *Reed*, commercial speech must be examined "under intermediate scrutiny, not strict scrutiny").

Hearst cites *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2663 (2011), for the same purpose. In *Sorrell*, however, the Supreme Court declined to decide whether the law at issue hampered commercial speech or ordinary speech because the outcome was the same regardless of the level of scrutiny. *Id.* at 2667. The court also cited approvingly to *Central Hudson* and its progeny. *Id.* at 2664, 2667-68. "This alone is enough to find that the typical commercial speech inquiry under intermediate scrutiny remains valid law. If the Court wished to disrupt the long-established commercial speech doctrine as applying intermediate scrutiny, it would have expressly done so." *King*, 903 F. Supp. 2d at 308; *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 43 (D.C. Cir. 2014) (interpreting *Sorrell* as an application of intermediate scrutiny).

*Sorrell* is also factually distinct from the present case. In *Sorrell*, the Supreme Court took issue with the fact that the Vermont legislature targeted speech espousing a viewpoint of public concern that it disagreed with (speech promoting brand-name drugs). *Sorrell*, 131 S. Ct. at 2663. Here, on the other hand, the Preservation of Personal Privacy Act is not aimed at a particular viewpoint, but rather the neutral ground of protecting the privacy of consumers. *See Small v. Ramsey*, 280 F.R.D. 264, 282 (W.D. Va. 2012) (distinguishing *Sorrell* where plaintiff sought "to protect his personal health care records from dissemination to everyone not entitled to them"). In addition, while the law at issue in *Sorrell* was aimed at a viewpoint of public concern, the focus of Preservation of Personal Privacy Act is restricted to private information. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759, 762-63 (1985) (a "credit report concerns no

29

public issue," but rather is speech of "purely private concern" that is "solely motivated by the desire for profit" and is thus "of less First Amendment concern").

### B.      The Preservation of Personal Privacy Act Survives A Facial Challenge

A party raising a facial challenge under the First Amendment shoulders a "heavy burden." *Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*, 508 F.3d 94, 98 (2d Cir. 2007).  "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("Facial challenges are disfavored.").  "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."  *Broadrick v. Okla.*, 413 U.S. 601, 613 (1973).

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  "Even when First Amendment rights are asserted, a litigant is denied standing to litigate an overbreadth challenge to a statute that can constitutionally be applied to his conduct unless a ruling is necessary to avert a 'real' and 'substantial' restraint on protected expression."  *Brache v. Cnty. of Westchester*, 658 F.2d 47, 53 (2d Cir. 1981) (citing *Broadrick*, 413 U.S. at 615); *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1321 (Fed. Cir. 2002) ("[I]n order to consider his facial challenge, [plaintiff] must still show a realistic possibility that application of [the regulation that he challenges] will suppress a substantial amount of constitutionally protected speech."); *United States v. Stevens*, 559 U.S. 460, 473 (2010) ("[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's

plainly legitimate sweep.'") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

In the context of commercial speech, in particular, the "strong medicine" of a facial challenge is generally not warranted. *Cent. Hudson*, 447 U.S. at 564 n.6 ("[C]ommercial speech, the offspring of economic self-interest, is a hardy breed of expression that is not particularly susceptible to being crushed by overbroad regulation.") (internal quotations omitted); *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989) ("[C]ommercial speech is more hardy, less likely to be 'chilled,' and not in need of surrogate litigators."); *832 Corp. v. Gloucester Twp.*, 404 F. Supp. 2d 614, 633 (D.N.J. 2005) ("Plaintiffs have raised no argument or evidence that persuades this Court to deviate from the general rule that facial challenges are not permitted for commercial speech restrictions.").

The single example of the Preservation of Personal Privacy Act's supposedly chilling effect on constitutionally protected speech cited by Hearst does not begin to approach the bar required for a facial challenge. Hearst's concern—that it may want to disclose that "a candidate for public office . . . bought one of its publications"—does not present "a realistic possibility that application" of the Preservation of Personal Privacy Act "will suppress a substantial amount of constitutionally protected speech." *Griffin*, 288 F.3d at 1321. Indeed, Hearst does not provide a single example of any such publication ever taking place. And, Hearst fails to demonstrate that its hypothetical is in fact an impressible application of the statute. It is thus extremely doubtful that the Preservation of Personal Privacy Act would ever have a chilling restraint on "truthful reporting" or any other kind of constitutionally protected speech. It is also clear that the single hypothetical application conceived by Hearst "is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent*, 466 U.S. at 800.

### C.     The Preservation of Personal Privacy Act Survives An As-Applied Challenge

The Preservation of Personal Privacy Act also survives an as-applied challenge under

*Central Hudson*.

First, the Preservation of Personal Privacy Act's restriction on speech seeks to further a

substantial government interest:  protecting the privacy of consumers.  *Whalen v. Roe*, 429 U.S.

589, 599 (1977) (referring broadly to the constitutional privacy "interest in avoiding disclosure

of personal matters"); *Sorrell*, 131 S. Ct. at 2672 (describing privacy as "a concept . . . integral to

the person and a right . . . essential to freedom"); *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818

(D.C. Cir. 2001) ("[W]e have no doubt that this interest—protecting the privacy of consumer

credit information—is substantial.").

Second, the Preservation of Personal Privacy Act directly advances the substantial

government interest of protecting the privacy of consumers.  Information about publication

purchases can "reveal intimate facts about our lives, from our political and religious beliefs to

our health concerns."  Compl. ¶ 44.[8]  Michigan's protection of reading information thus reflects

the "gut feeling that people ought to be able to read books and watch films without the whole

world knowing," and recognizes that "[b]ooks and films are the intellectual vitamins that fuel the

growth of individual thought.  The whole process of intellectual growth is one of privacy—of

quiet, and reflection.  This intimate process should be protected from the disruptive intrusion of a

roving eye."  Compl. ¶ 15.[9]  The Preservation of Personal Privacy Act expressly prohibits the

unauthorized dissemination of this private reading information and thus directly advances the

substantial government interest of protecting the privacy of consumers.

---

[8] Citing California's Reader Privacy Act Signed into Law, Electronic Frontier Foundation (Oct. 3, 2011), https://www.eff.org/press/archives/2011/10/03 (last visited May 12, 2015).

[9] Citing S. Rep. No. 100–599, at 6 (Statement of Rep. McCandless).

Third, the Preservation of Personal Privacy Act reaches no further than necessary to accomplish this objective.  The Preservation of Personal Privacy Act is narrowly tailored because its language limits dissemination of precisely the kind of private consumer information subject to the government's substantial interest and no more.  The Preservation of Personal Privacy Act also includes five exceptions that limits its scope:

> A record or information described in section 2 may be disclosed only in 1 or more of the following circumstances:
> (a) With the written permission of the customer.
> (b) Pursuant to a court order.
> (c) To the extent reasonably necessary to collect payment for the materials or the rental of the materials, if the customer has received written notice that the payment is due and has failed to pay or arrange for payment within a reasonable time after notice.
> (d) If the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer. The person disclosing the information shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.
> (e) Pursuant to a search warrant issued by a state or federal court or grand jury subpoena.

M.C.L. § 445.1713.  These exceptions are carefully crafted to serve the statute's purpose of protecting consumer privacy while ensuring that it is no broader than necessary.  None of these exceptions are based on viewpoint, and they take into account the needs of businesses like Hearst to collect payments, market goods and services directly, or to release information with written consent.

In fact, the law at issue in *Sorrell* would have survived if it had contained precisely these kinds of exceptions.  The Supreme Court noted that if Vermont had limited "the information's sale or disclosure in only a few narrow and well-justified circumstances," rather than "allow[ing] the information to be studied and used by all but a narrow class of disfavored speakers," it "would present quite a different case." *Sorrell*, 131 S. Ct. at 2668.  And, Judge Steeh has already

rejected a First Amendment challenge to the Preservation of Personal Privacy Act on the basis of this distinction. *Halaburda*, 2013 WL 4012827, at *7 ("[T]he court finds dismissal under *Sorrell* to be inappropriate based on the significant distinctions between the two cases.").

## IV.   PLAINTIFF SUFFICIENTLY PLEADS A CLAIM UNDER THE PRESERVATION OF PERSONAL PRIVACY ACT

### A.   Hearst Is Engaged In The Business Of Selling At Retail

Hearst argues there is "no basis in law or fact for finding that by making magazine subscriptions available to consumers, Hearst is 'engaged in the business of selling at retail,'" and the Complaint "therefore fails to state a claim under the VPRA." That is false. Hearst's argument has already been rejected in *Halaburda* and *Kinder*. *See Halaburda*, 2013 WL 4012827, at *7 ("As to 'selling at retail,' the court is persuaded by plaintiffs' argument that the defendants to these actions [including Hearst] are in the business of publishing magazines, and sell them to the ultimate consumer of the products. Defendants do not dispute this description. This appears to satisfy the 'selling at retail' requirement of the statute."); *Kinder*, 2014 WL 4209575, at *6 ("Kinder had adequately alleged the she purchased her magazines from Meredith at retail."). In *Kinder*, Judge Ludington thoroughly analyzed the "at retail" requirement in the Preservation of Personal Privacy Act. *See Kinder*, 2014 WL 4209575, at *6. Judge Ludington stated:

> [A]t retail is not defined in the statute, and therefore it should receive 'its ordinary and natural meaning.' … The Oxford English Dictionary defines 'retail' as '[t]he action or business of selling goods in relatively small quantities for use or consumption rather than for resale.' Therefore, if Kinder had purchased her magazine subscription through a third-party, rather than directly from Meredith, she would not have bought them at retail. … Although Kinder did not provide the specific method of subscription, she alleged that she 'purchased written materials directly from Meredith.' … Therefore, Kinder has adequately alleged that she purchased her magazines from Meredith at retail.

34

*Id.* (internal quotations and citations omitted).  Here, Plaintiff alleges, as did *Kinder*, that:

> 55.  By subscribing to *Country Living*, Plaintiff purchased written materials ***directly from Hearst***.  *See* M.C.L. § 445.1712.
>
> 56.  Because Plaintiff purchased written materials ***directly from Hearst***, she is a 'customer' within the meaning of the VRPA.  *See* M.C.L. § 445.1711(a).

Compl. ¶¶ 55-56 (emphasis added).  Plaintiff also alleges that, "[a]s a magazine publisher that sells subscriptions to consumers, Hearst is engaged in the business of selling written materials at retail.  *See* M.C.L. § 445.1712."  *Id.* ¶ 54.  "Therefore, [Plaintiff] has adequately alleged that she purchased her magazines from [Hearst] at retail."  *Kinder*, 2014 WL 4209575, at *6.

Furthermore, Hearst's appeal to the rule of lenity[10] is misguided.  *See* Def.'s Br. at 35.  The Court need not even address Hearst's rule of lenity argument, or any other canon of statutory construction, as "the statute by its terms appears to apply to these circumstances."  *Halaburda*, 2013 WL 4012827, at *7; *Kinder*, 2014 WL 4209575, at *3 ("As previous courts have held, there is no ambiguity in the VRPA's civil liability provisions."); *see also Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 423 (2d Cir. 2005) ("Only if we discern ambiguity do we resort to canons of statutory construction.").

Nonetheless, even if the Court addresses Hearst's rule of lenity argument it fails for two reasons.  "First, the VRPA's civil damages provisions do not serve a punitive function.  As noted by the Ninth Circuit, statutory damages may have a compensatory, deterrent, or punitive purpose."  *Kinder*, 2014 WL 4209575, at *3; *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("[W]e presume that the statutory damages serve a compensatory function.  … That Congress provided a consumer the option of recovering either actual or

---

[10] "The rule of lenity is that in criminal prosecutions, ambiguities in a statute are resolved in the defendant's favor."  *Lurie v. Wittner*, 228 F.3d 113, 125 (2d Cir. 2000).

statutory damages, but not both, supports the presumption that they serve the same purpose.").

Second, "'the rule of lenity is typically invoked only when interpreting the substantive scope of a

criminal statute or the severity of penalties that attach to a conviction' – not to the interpretation

of a civil penalty." *Kinder*, 2014 WL 4209575, at *3 (quoting *United States v. Canal Barge Co.,

Inc.*, 631 F.3d 347, 353 (6th Cir. 2011)).  "[T]he VRPA has a criminal provision separate and

distinct from the provisions imposing civil damages, which suggests that the two provisions

should be treated as separate and distinct by reviewing courts." *Kinder*, 2014 WL 4209575, at

*3; *see also Sash v. Zenk*, 439 F.3d 61, 65 (2d Cir. 2006) ("[N]o one contends that the rule of

lenity should apply in the civil context.").

### B.   Hearst Cannot Hide Behind The Preservation of Personal Privacy Act's Exclusively For Direct Marketing Defense

Hearst argues that its disclosures are excused because under the Preservation of Personal

Privacy Act's exclusively for direct marketing defense. Def.'s Br. at 35-37.  The Preservation of

Personal Privacy Act allows disclosure where it "is for the exclusive purpose of marketing goods

and services directly to the consumer," and if the "person disclosing the information … inform[s]

the customer by written notice that the customer may remove his or her name at any time by

written notice to the person disclosing the information."  M.C.L. § 445.1713(d).

As an initial matter, Hearst's defense is based on a declaration and accompanying exhibit.

*See* Def.'s Br. at 36-37; Declaration of Kristina E. Findikyan, Ex. A, Dkt. Nos. 19, 19-1.  It is

inappropriate for the Court to consider these on a motion to dismiss.  *See, e.g.*, *Schwartz v.

Schwartz*, 2014 WL 6390316, at *3 (E.D.N.Y. Nov. 17, 2014) ("[T]he Court notes that it will not

consider matter outside the pleadings, such as the party and non-party declarations … on a

motion to dismiss.") (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d

192, 202 (2d. Cir. 2013) ("We do not consider matters outside the pleadings in deciding a motion

to dismiss for failure to state a claim.")).  Hearst incorrectly argues that the "Court can take judicial notice of the contents of this disclosure … because the contents of *Country Living* and its subscription website are integral to the Complaint."  Def.'s Br. at 36 n.20.  In fact, a document is only considered "integral" to the complaint where the complaint "relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002).  "[M]ere notice or possession [of a document] is not enough."  *Id.*  Instead, a plaintiff must have "reli[ed] on the terms and effects" of the document in drafting his complaint in order for the Court to consider it on a motion to dismiss.  *Id.*  Here, Plaintiff did not at all rely on Hearst's purported notices.  In fact, Plaintiff alleges that "[she] and the members of the Class did not receive notice before Hearst disclosed their Personal Reading Information to third parties."  Compl. ¶ 64.  Accordingly, it is inappropriate for the Court to consider the declaration and accompanying exhibit on this motion to dismiss. [11]

Nonetheless, even if the Court were to consider the declaration and accompanying exhibit, this defense fails at this stage for three reasons.

---

[11] Hearst's citations to *Lifetree Trading PTE., LTD. v. Washakie Renewable Energy, LLC*, 2015 WL 3948097 (S.D.N.Y. June 29, 2015) and *Wilson v. Kellogg Co.*, 2015 WL 3937511 (E.D.N.Y. June 25, 2015) are readily distinguishable.  In *Lifetree*, the Court considered a contract which was attached to the amended complaint in a breach of contract case.  *See Lifetree*, 2015 WL 3948097, at *4.  In *Wilson*, the Court considered the defendant's terms and conditions on its website because the "Plaintiff agreed to the Terms and Conditions. … Plaintiff d[id] not deny that he agreed to the Terms and Conditions; in fact, he acknowledge[d] agreeing to them in his Second Amended Complaint."  *Wilson*, 2015 WL 3937511, at *3.  Here, by contrast, Plaintiff alleges that "she and members of the Class never consented to Hearst disclosing their Personal Reading Information to anyone," and that "Hearst never requires the individual to read or agree to any terms of service, privacy policy, or information-sharing policy."  Compl. ¶¶ 63, 43.

**1.      Hearst's Exclusively For Direct Marketing Defense Cannot Be Adjudicated On A Motion To Dismiss**

<u>First</u>, the exclusively for direct marketing defense fails because it is premature for a

motion to dismiss. "Typically, statutory exemptions should be asserted as affirmative defenses

because affirmative defenses admit to the allegations in the complaint but provide a reason why

plaintiff should not recover." *Gjoni v. Orsid Realty Corp.*, 2015 WL 45570307, at *7 (S.D.N.Y.

July 22, 2015). "An affirmative defense may be raised by a pre-answer motion to dismiss under

Rule 12(b)(6) if the defense appears on the face of the complaint." *Iowa Public Employees'*

*Retirement Sys. v. MF Global, Inc.*, 620 F.3d 137, 146 (2d Cir. 2010) (emphasis added); *see also*

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (holding a motion to dismiss

may be granted on the basis of an affirmative defense only "where the <u>undisputed facts</u>

conclusively establish an affirmative defense as a matter of law") (emphasis added). For a

defense to appear on the face of a complaint, "the facts establishing the defense [must be]

definitively ascertainable from the allegations of the complaint." *Hensley Mfg.*, 579 F.3d at 613.

That is not the case here. Rather, the facts central to Hearst's defense are in dispute, including

the purpose of the disclosures and the sufficiency of Hearst's purported notice. *See* M.C.L. §

445.1713(d). Plaintiff's allegations that the disclosures were not for the *exclusive* purpose of

marketing goods and services *directly* to her, *see* Compl. ¶¶ 2, 3, 39-41, 58-59, and that Hearst

failed to provide notice, *see id.* ¶¶ 4, 7, 42, 43, 64, govern at the pleadings stage. *See Halaburda*,

2013 WL 4012827, at *8 ("Defendants here are making arguments concerning their compliance

with Mich. Comp. Laws Ann. §§ 445.1713(a) & (d) which appear to be better suited for a

summary judgment motion. As plaintiffs argue, they have alleged the unlawful disclosure of

personal reading information without notice or consent. The court finds nothing more required

at this juncture."); *United States v. One Tyrannosaurus Bataar Skeleton*, 2012 WL 5834899, at

*8 (S.D.N.Y. Nov. 14, 2012) ("[Defendant's] fair notice argument … does not appear on the face of the well-pleaded complaint and hence is not appropriate for consideration on a motion to dismiss."); *Barrett v. Armor Correctional Health, Inc.*, 2014 WL 1220756, at *6 (E.D.N.Y. Mar. 20, 2014) ("However, while Armor may assert its affirmative defense and may be able to successfully argue nonexhaustion after discovery, dismissal on this basis is not appropriate" on a motion to dismiss); *Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585, 598 (6th Cir. 2012) (a statutory affirmative defense "is not appropriate for consideration on a motion to dismiss when … the plaintiffs do not raise it in the complaint").  Accordingly, Hearst cannot secure dismissal based on the Preservation of Personal Privacy Act's exclusively for direct marketing defense.

### 2. Hearst's Disclosures Were Not Exclusively For Direct Marketing Purposes

Second, the exclusively for direct marketing defense fails because the information Hearst disclosed is not covered by the exception.  The exclusively for direct marketing defense only applies "[i]f the disclosure is *for the exclusive purpose* of marketing *goods and services directly* to the customer," and if Hearst "inform[ed] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d) (emphasis added).  Plaintiff alleges that Hearst's disclosures were *not* for the exclusive purpose of marketing goods and services directly to her.  Plaintiff specifically alleges that Hearst disclosed her Personal Reading Information to data mining companies, including Insource and others, *see* Compl. ¶¶ 2, 7, 39-40, 58, and that these disclosures were made to allow Hearst to later sell enhanced versions of its mailing lists at higher prices.  *See id.* ¶¶ 40-41, 59-60, 67.  Further, Plaintiff's Complaint provides no basis for concluding that data miners such as Insource even offer goods and services directly to consumers.  *See id.* ¶¶ 23-24. Because Plaintiff alleges that Hearst's disclosures were not for the exclusive purpose of

marketing goods and services directly to her, Hearst cannot defeat this lawsuit by relying on the exclusively for direct marketing defense.

### 3.    Hearst Did Not Provide Timely Or Adequate Notice Under The Preservation of Personal Privacy Act

<u>Third</u>, Hearst fails to show it provided proper notice. Neither Hearst's motion nor its supporting declaration establish that notice was provided to Plaintiff or the Class before Hearst disclosed their information. The magazine clipping is dated April 2015, *see* Dkt. No. 19-1, at 2, whereas Plaintiff alleges Hearst began disclosing her information as soon as she subscribed. *See* Compl. ¶ 7 ("Since subscribing to *Country Living* … Hearst has disclosed, and continues to disclose, without consent or prior notice, Plaintiff Boelter's Personal Reading Information."). Likewise, Hearst provides no information regarding the timing of any purported notice via its website. As such, Hearst's purported notices fail to show that Plaintiff was notified prior to Hearst's disclosures or given the opportunity to opt out. *See id.* ¶¶ 4, 7, 42-43, 45.

Moreover, Hearst did not actually provide sufficient notice. Hearst contends that its website notifies consumers of its information sharing policies. *See* Def.'s Br. at 36-37. But, nothing in Plaintiff's Complaint suggests that she signed up online, and Hearst does not establish how subscribers receive notice of the Website Privacy Policy. Further, Hearst's purported in-magazine notice – stating that Hearst makes its subscriber list available to companies who sell goods by mail that it believes would be of interest to its readers – is insufficient. In considering whether a disclosure is sufficient, courts have considered "factors such as font size, placement, or emphasis of" the disclosure. *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (citing *Lonner v. Simon Prop. Grp., Inc.*, 57 A.D.3d 100, 110 (2d Dep't 2008)). Here, the terms of Hearst's "disclosure" are buried in font so small they may not

be legible, on pages that – at least on their faces – have nothing to do with information privacy. *See* Dkt. 19-1, at 3.

Furthermore, in the analogous context of consumer warranty disclaimers, Michigan law requires such disclaimers "be conspicuous." *Lumber Mut. Ins. Co. v. Clarklift of Detroit, Inc.*, 569 N.W.2d 681, 683 (Mich. Ct. App. 1997). Because the Preservation of Personal Privacy Act does not define what constitutes sufficient notice, the Court should look to similar areas of Michigan law for guidance. *See Fish v. Home Depot USA, Inc.*, 455 F. App'x 575, 583 (6th Cir. 2012) (looking to the definitions provided in the Michigan Uniform Commercial Code to interpret the Michigan Consumer Protection Act). The Michigan Uniform Commercial Code defines "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." M.C.L. § 440.1201(j). "A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to surrounding text of the same or lesser size" is conspicuous. *Id.* § 440.1201(j)(1). "Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to surrounding text of the same size, or set off from surrounding text of the same size by symbols or other markets that call attention to the language," is also conspicuous. *Id.* § 440.1201(j)(2). Here, Hearst's "disclosure" is not "written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.* § 440.1201(j). The "disclosure" is not set off by a heading, contrasting type, font, or color, nor is its language set off as such. Therefore, Hearst's "disclosure" does not provide sufficient notice under the Preservation of Personal Privacy Act's exclusively for directing marketing defense.

## V.    PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR UNJUST ENRICHMENT

### A.    Plaintiff's Unjust Enrichment Claim Is Not Solely Predicated On Hearst's Violation Of The Preservation of Personal Privacy Act

Hearst contends that "Plaintiff's unjust enrichment claim is preempted" because "the VRPA provides the exclusive remedy, if any, for Plaintiff's claims." Def.'s Br. at 38-39. Hearst's argument misses the mark. Plaintiff's unjust enrichment claim is not solely predicated on Hearst's violation of the VRPA. Among other things, Plaintiff's claim alleges that Hearst "was unjustly enriched when it retained her subscription fees but disclosed her personal reading information," the protection of which was part of the cost of her magazine subscription. *Kinder*, 2014 WL 4209575, at *7, *see also* Compl. ¶¶ 80-83. In other words, Plaintiff's allegation is that "Plaintiff and the other Class members were denied services that they paid for and were entitled to receive … and because Plaintiff and the Class would have commanded a discount to voluntarily forego those benefits, they incurred actual damages." Compl. ¶ 82; *see also Kinder*, 2014 WL 4209575, at *7 ("Kinder alleges that as part of the costs of her magazine subscriptions, she was entitled to confidentiality in her personal reading information."); *Cain*, 981 F. Supp. 2d at 687 ("In other words, Plaintiffs allege that they incurred actual monetary damages because a portion of the price of each Redbox rental paid for by Plaintiffs … was intended to ensure the confidentiality of Plaintiffs' … Personal Viewing Information. … [T]aking this allegation as true, Plaintiffs have adequately alleged some damage.") (internal quotations omitted).[12]

Because Plaintiff's unjust enrichment claim is not solely predicated on Hearst's violation of the Preservation of Personal Privacy Act, the Court must look to the legislative intent to

---

[12] Plaintiff's unjust enrichment claim is also predicated on the theory that "Plaintiff and the Class members have suffered actual damages inasmuch as Hearst's failure to inform them that it would disclose their Personal Reading Information caused them to purchase magazine subscriptions when they otherwise would not have." Compl. ¶ 81. *See infra* Section V.B.

determine if the Preservation of Personal Privacy Act abrogated common law unjust enrichment. *See Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*, 780 N.W.2d 272, 277 (Mich. 2010) ("The abrogative effect of a statutory scheme is a question of legislative intent.").  "[L]egislative amendment of the common law is not lightly presumed." *Id.* (quotations omitted).  "Rather, the Legislature 'should speak in no uncertain terms' when it exercises its authority to modify the common law." *Id.* (quoting *Hoerstman Gen. Contracting, Inc. v. Hahn*, 711 N.W.2d 340, 346 (Mich. 2006)).  Here, Hearst does not point to any legislative history or statutory text that would suggest the Michigan Legislature intended to abrogate Plaintiff's ability to bring an unjust enrichment claim.  In fact, the Preservation of Personal Privacy Act is silent on whether it abrogates common law claims.  *See* M.C.L. § 445.1715.  Further, the legislative history states that the bill "would recognize that a person's choice in reading … is a private matter, and not a fit subject for considering by gossipy publications."  Compl. Ex. A, *Privacy:  Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20 1989.  It is therefore implausible that the Michigan Legislature would want to preclude Plaintiff from pursuing common law claims against magazine publishers who disclose their subscribers' Personal Reading Information.

### B.    Plaintiff States A Claim For Unjust Enrichment On The Facts Alleged

Hearst finally argues that Plaintiff fails to state a claim for unjust enrichment on the facts alleged for three reasons.  All are wrong.

<u>First</u>, Hearst repeats its earlier argument that "it is both factually and legally untenable" to allege that "the privacy of [Plaintiff's] Purchase Information has intrinsic monetary value."

43

Def.'s Br. at 39-40.  But, as Judge Ludington explained in *Kinder*, Hearst's "argument misses the point."  *Kinder*, 2014 WL 4209575, at *7 n.3.[13]

> [A]ccording to Kinder's allegations, Meredith agreed not to disclose her personal information.  That the information may be available through other means is irrelevant to Meredith's obligation to abstain from disclosure.  Thus, because Meredith did allegedly disclose Kinder's personal information – in spite of its alleged obligation to not disclose – Kinder did not receive the full amount of benefits she was entitled to based on her subscription.

*Id.*  "Under Michigan law, a claim for unjust enrichment requires the plaintiff 'to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party.'"  *Id.* at *7 (quoting *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012)).  Here, Plaintiff alleges that Hearst was unjustly enriched when it retained her subscription fees (a benefit), but disclosed her personal reading information for a profit (an inequity).  *See* Compl. ¶¶ 76, 83.  These allegations state a claim for unjust enrichment.  *See Kinder*, 2014 WL 4209575, at *7 ("Kinder alleges that Meredith was unjustly enriched when it retained her subscription fees but disclosed her personal reading information.  Because Kinder has sufficiently alleged that Meredith was unjustly enriched, this claim will not be dismissed."); *Coulter-Owens*, 2015 WL 575004, at *5 ("Taking her allegations as true, Coulter-Owens properly alleges a claim for unjust enrichment; she says Rodale received a monetary benefit from illegally disclosing its subscribers' confidential information.  This allegation meets the requirements for an unjust enrichment claim."); *Halaburda*, 2013 WL 4012827, at *8 ("[P]laintiffs have pleaded that defendants engaged in collection and illegal disclosure of their personal reading information, and that the monetary and other benefits associated with such disclosure represents unjust enrichment

---

[13] This argument is also wrong for the reasons stated in Section I.C, *supra*.

of defendants. This cause of action will not be dismissed for failure to state a claim."); *Cain*, 981 F. Supp. 2d at 687 (same).

Second, Hearst argues "Plaintiff's cause of action for unjust enrichment also must fail because she does not adequately allege that Hearst was *unjustly* enriched." Def.'s Br. at 40. But Judge Steeh already rejected this argument in *Halaburda*. *See Halaburda*, 2013 WL 4012827, at *8 (rejecting argument and finding Hearst's cited cases distinguishable). As in *Halaburda*, Plaintiff's Complaint alleges that Hearst received her Personal Reading Information and subscription payment, and that it unjustly retained that money and the money gained from disclosing her Personal Reading Information. *See* Compl. ¶¶ 76, 79, 83. Moreover, Plaintiff's Complaint alleges that Hearst sold Plaintiff's Personal Reading Information and derived substantial revenues from doing so. *See* Compl. ¶¶ 7, 39-45, 83, 84. As such, Plaintiff alleges that Hearst improperly retained benefits conferred by Plaintiff, and therefore sufficiently alleges a claim for unjust enrichment. *See Coulter-Owens*, 2015 WL 575004, at *5 ("Taking her allegations as true, Coulter-Owens properly alleges a claim for unjust enrichment; she says Rodale received a monetary benefit from illegally disclosing its subscribers' confidential information. This allegation meets the requirements for an unjust enrichment claim."); *Kinder*, 2014 WL 4209575, at *7 (same); *Halaburda*, 2013 WL 4012827, at *8 (same); *Cain*, 981 F. Supp. 2d at 687 (same); *see also Resnick*, 693 F.3d at 1238 (finding plaintiff stated unjust enrichment claim where she alleged that data privacy was included in the price of a paid service, but not provided).

Third, Hearst argues there is not a "plausible factual allegation that Hearst did not provide Plaintiff with value in return for her subscription price – a subscription to *Country Living* magazine." Def.'s Br. at 41. Hearst's argument again misses the point. "As set forth above …

45

Plaintiff[] assert[s] part of the bargain was not just to [receive *Country Living*]," but also to "ensure the confidentiality of Plaintiff's and the other Class members' Personal Reading Information." *Cain*, 981 F. Supp. 2d at 687; Compl. ¶ 82.  Therefore, Plaintiff's unjust enrichment claim does not fail by virtue of the fact that she received *Country Living* magazine. *See Kinder*, 2014 WL 4209575, at *7 n.3 ("[B]ecause Meredith did allegedly disclose Kinder's personal information – in spite of its alleged obligation to not disclose – Kinder **did not receive the full amount of benefits** she was entitled to based on her subscription." (emphasis added); *Cain*, 981 F. Supp. 2d at 687 (rejecting Hearst's argument).[14]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Hearst's motion to dismiss in its entirety.

---

[14] Hearst cites *Isom v. NE Lots LLC*, 2010 WL 143470, at *6 (Mich. Ct. App. Jan. 14, 2010) in support, but *Isom* is easily distinguishable.  In *Isom*, the court rejected an unjust enrichment claim because the counterclaimant had received the <u>full</u> benefit of its bargain, not a <u>partial</u> benefit as Plaintiff alleges here.  *See id.* ("As we noted above, NE Lots did get the benefit of its bargain.").

Dated:  September 14, 2015

Respectfully submitted,


By:     */s/ Joseph I. Marchese*
           Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
           jmarchese@bursor.com
           pfraietta@bursor.com

*Attorneys for Plaintiff*