```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/16
```

SUZANNE BOELTER, individually and on behalf of others similarly situated,

                      Plaintiff,

-against-

HEARST COMMUNICATIONS, INC.,

                      Defendant.

15 Civ. 03934 (AT)

**MEMORANDUM AND ORDER**

ANALISA TORRES, District Judge:

      Plaintiff, Suzanne Boelter, on behalf of herself and others similarly situated, brings this class action against Defendant, Hearst Communications, Inc., a magazine publisher, alleging that it disclosed subscribers' identifying information to third parties in violation of the Michigan Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA"). Plaintiff moves for an order preliminarily enjoining Defendant from making such disclosures. Defendant moves to stay discovery pending resolution of its motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Plaintiff's motion for preliminary injunction is DENIED for lack of subject matter jurisdiction, and Defendant's motion to stay discovery is GRANTED.

## BACKGROUND

      Plaintiff's complaint is predicated on Defendant's alleged breach of the VRPA, a statute that prohibits persons engaged in the selling of written materials from disclosing to third parties identifying information about its customers. M.C.L. § 445.1712. Plaintiff, who subscribes to one of Defendant's magazines, alleges that Defendant has disclosed her and others' personal identifying information—including subscribers' full names, titles of magazines subscribed to,

and home addresses—to data mining companies. *See* Compl. ¶ 2, ECF No. 1. As a result, Plaintiff's private information has been made public, and she receives unwanted junk mail and other solicitations. *Id.* ¶ 7; Pl. Mem. in Supp. Mot. Prelim. Inj. ("Pl. Mem.") at 1, ECF No. 51. Moreover, Plaintiff alleges that the value of the subscription is reduced by Defendant's conduct, and, as a result, Defendant has been unjustly enriched. Compl. ¶¶ 7, 74-84. Plaintiff seeks the greater of actual damages or statutory damages, and an order enjoining Defendant from further disclosure of subscriber information. *Id.* ¶ 85.

## DISCUSSION

I.  Preliminary Injunction

    A. Standing

    1. Legal Standard

A plaintiff must "demonstrate standing for each claim and form of relief sought," including preliminary injunctive relief. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Standing is a constitutional requirement, grounded in Article III, that litigants have suffered injury that is traceable to the defendant and can be redressed by the court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The injury must be an "injury in fact," meaning it is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish that she has suffered or will suffer sufficient injury, the plaintiff's burden is "no less than that required on a motion for summary judgment." *Cacchillo*, 638 F.3d at 404 (citing *Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871, 907 n.8 (1990) (Blackmun, J., dissenting)). Accordingly, the movant cannot rely on "mere allegations . . . but must set forth by affidavit or other evidence specific facts" which, for purposes of the motion, will be taken as true. *Id.* (citing

*Lujan*, 504 U.S. at 561) (internal quotation marks omitted). In opposing this motion, Defendant argues that Plaintiff lacks standing because she has (1) failed to allege that she has suffered an injury in fact and (2) has not provided sufficient evidence showing that Defendant's conduct caused her alleged injuries.

2. Injury-in-fact

Plaintiff contends that Defendant's alleged conduct injures her in two ways. First, Defendant has disclosed, and will continue to disclose, information that indicates her identity to third parties—conduct that is prohibited by the VRPA. Pl. Mem. at 1. Second, this has resulted in the receipt of unwanted solicitations and junk mail from advertisers. *Id.* Defendant argues that this is insufficient. It contends that the violation of a statute is, by itself, insufficient to confer standing; and given that, Plaintiff's receipt of unwanted mail and other solicitations does not satisfy the injury-in-fact requirement.

Because standing is a constitutional prerequisite, a litigant's burden of establishing injury-in-fact cannot be abrogated by statute. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). "[I]t has long been recognized," however, that statutes *can* create legal rights, the violation of which constitutes sufficient injury to confer standing to sue. *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 175, 180 (2d Cir. 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Lujan*, 504 U.S. at 578). This does not mean that violating a statute results *per se* in an injury-in-fact. *Summers*, 555 U.S. at 496 (noting that a statutory violation "*in vacuo*" is "insufficient to create Article III standing"). Rather, the violation of the statute must otherwise satisfy the injury-in-fact requirements—that is, the consequence must be "concrete and particularized" and "actual or imminent" to the litigant seeking to enforce the right. *See id.* (explaining, in the context of the procedural right at issue,

3

that so long as there is a "concrete interest" affected by the deprivation of the right, then that deprivation causes injury); *see also Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015) ("Thus, in evaluating whether a plaintiff alleging a statutory violation has standing, the relevant question is not whether the plaintiff has alleged injury beyond the violation of the statute, but rather 'whether the . . . statutory provision on which the claim rests properly can be understood as granting [the plaintiff] a right to judicial relief.'" (quoting *Warth*, 422 U.S. at 500)); *Robainas v. Metro. Life Ins. Co.*, No. 14 Civ. 9926, 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015), *appeal docketed*, No. 15-3504 (2d Cir. Oct. 30, 2015) (citing caselaw to show that, in order to establish standing, a statutory violation must "constitute a *palpable* deprivation" (emphasis added)).

Two cases set forth the guiding principles. First, the Second Circuit reaffirmed that a statutory violation can cause an injury in fact in *Donoghue v. Bulldog Investors General Partnership*. There, a plaintiff brought a derivative claim under Section 16(b) of the Securities Exchange Act of 1934, a provision which discourages short-swing trading by certain owners of an issuer's equity securities by providing that "realized short-swing profits 'shall inure to and be recoverable by the issuer.'" 696 F.3d at 172-73 (quoting 15 U.S.C. § 78p(b)). The defendant partnership profited from a short-swing trade of stock issued by an investment company, and plaintiff, a fellow shareholder of that company, sued to recover the profit. *Id.* Arguing that it lacked a legally significant relationship to plaintiff and that its trading did not cause an injury, the defendant challenged the plaintiff's standing to sue. *See id.* at 176 (internal quotation marks and citation omitted). The Second Circuit rejected this argument, finding that § 16(b) "conferred upon [the issuer] an enforceable legal right to expect [the defendant] to refrain from engaging in

4

any short-swing trading of its stock," the deprivation of which "establishes Article III standing." *Id.* at 177 (citations and internal quotation marks omitted).[1]

Compare the outcome in *Donoghue* to that in *Robainas v. Metropolitan Life Insurance Co.* In *Robainas*, the plaintiffs sued the issuer of their life insurance policies, claiming that it violated a state statute that prohibits insurers from making misrepresentations about their reserve assets. 2015 WL 5918200, at *3. Under the statute, an insurer that "knowingly violates" it is liable to any person "aggrieved for his own use and benefit." *Id.* at *4 (quoting N.Y. Ins. Law § 4226(d)). The plaintiffs first argued that they had standing to sue because they were policyholders of the defendant insurer, and that the statute "[did] not require that they experience any injury or suffer any damages." *Id.* The court found this argument to be unsupported by law. *See id.* at *7 (admonishing that even if a statute does not require a plaintiff to be injured to sue under it, "the plaintiff must still allege a distinct and palpable injury to [her]self" to satisfy Article III (quoting *Warth*, 422 U.S. at 501)); *see also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 119 (2d Cir. 2009) (holding that the plaintiff's argument that the statute at issue did not require a showing of direct injury was "a clear misstatement of law").

The court held that the *Robainas* plaintiffs' alternative theories of injury—involving claims of riskier policies and inflated premiums—were "conclusory," contradicted by the evidence, and "hypothetical [and] speculative," failing to show an injury sufficient to confer standing. *Id.* at *6 (citations omitted). Unlike the plaintiff in *Donoghue*, who was entitled to lost

---

[1] Defendant reads *Donoghue* to hold that the situations in which the violation of a statute confers standing are limited to those where the statute "codifies existing legal duties." Def. Mem. Opp'n Mot. Prelim. Inj. at 20 n.10, ECF No. 53. The opinion does not prescribe that limitation, however. And it does not follow that because the prohibited conduct in *Donoghue* was akin to violating a fiduciary duty, 696 F.3d at 177, *only* conduct similar to violating "existing legal duties" constitutes injury-in-fact. In any event, the Second Circuit noted that it was by virtue of the violation of the statute—and not some other preexisting right—that the plaintiff suffered injury and had standing to sue. *See id.* at 179 ("While this particular legal right might not have existed but for the enactment of § 16(b), Congress's legislative authority to broaden the injuries that can support constitutional standing is beyond dispute.").

5

profits because of the defendant's unlawful conduct, the plaintiffs in *Robainas* were, aside from speculative concerns of risk and future harm, entirely unaffected.[2] In other words, although statutes can create legal rights, the violation of the statute there did not constitute a "palpable deprivation," particular to the litigants bringing suit.[3] *Id.* (citing cases).

Turning to the present case, the Court finds that, like the law at issue in *Donoghue*, the VRPA creates for Plaintiff a specific, enforceable legal right to expect Defendant to keep private her identifying information, and unlike the speculative, generalized harm alleged in *Robainas*, its violation constitutes a concrete, particularized deprivation. The VRPA prohibits specified individuals from disclosing information about a customer that "indicates" her identity. M.C.L.A. § 445.1712. Customers who are "identified in . . . information that is [unlawfully] disclosed" may bring a civil action to recover the greater of actual or statutory damages, as well as costs and attorney fees. M.C.L.A. § 445.1715. Plaintiff's interest in this suit is not merely technical, abstract, or tangential. Instead, it "consist[s] of obtaining compensation for, or preventing, the violation of a legally protected right," *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772-73 (2000)—here, a right grounded in a statute enacted to "protect individual consumers

---

[2] It is not that the violation of the statute in *Robainas* could never constitute an injury; indeed, the court implied that the outcome may have been different had the plaintiffs contended, for example, that they personally "read, heard, or relied on" the defendant insurer's misrepresentations, 2015 WL 5918200, at *4, or that they "would not have purchased policies . . . but for [the defendant's] nondisclosures," *id.* at *6 (citation omitted).

[3] Considering a range of cases in which plaintiffs were found to lack standing further elucidates when a statutory violation *does not* satisfy the injury-in-fact requirement: When courts have found parties to lack standing, it is, for instance, because the parties alleged injury from government action with which they were uninvolved, *see Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-87 (1982); or the violation of a purely procedural mechanism that they did not need to use, *see id.* at 487 n.24; *Summers*, 555 U.S. at 496-97; or from "wholly abstract and widely dispersed" institutional injury, *Raines v. Byrd*, 521 U.S. 811, 829 (1997); or they did not have a stake in the outcome of the litigation, *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772-73 (2000); or they claimed violation of a right to have the defendant comply with the law without alleging how the failure to comply caused any harm, *Kendall*, 561 F.3d at 120-21. Such reasons are not applicable to the present case, which, as alleged, features a plaintiff directly and personally affected by Defendant's alleged conduct in violation of the law—a law enacted to protect individuals from that specific type of conduct. *Cf. Austin-Spearman*, 98 F. Supp. 3d at 666-67 (citing *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) and other cases finding that the federal law after which the VRPA was modeled "establishes a . . . right sufficient to confer standing through its deprivation").

from certain disclosures of their personal information." *Halaburda v. Bauer Publ'g Co., LP*, No. 12 Civ. 12831, 2013 WL 4012827, at *6 (E.D. Mich. Aug. 6, 2013) (finding the plaintiffs in that case to have standing to sue under the VRPA). If Defendant violated the statute by disclosing Plaintiff's personal information, it deprived Plaintiff of a right to which she was particularly entitled by law, constituting an injury-in-fact sufficient to confer standing.[4]

3. Evidence of injury

The possibility of injury aside, in order to show that she has standing to seek a preliminary injunction, Plaintiff must do more than allege that she has suffered harm because of Defendant's conduct; she must provide "affidavit[s] or other evidence specific facts" that support her claims. *Cacchillo*, 638 F.3d at 404 (citing *Lujan I*, 497 U.S. at 907 n.8); *see also Amidax Trading Grp.*, 671 F.3d at 145-49 (finding, in the context of a motion to dismiss, that the plaintiff did not allege in sufficient detail that it suffered harm at the hands of the defendant). This, Plaintiff does not do.

Other than the conclusory statements contained in the declarations submitted alongside her motion, Plaintiff's sole evidence that Defendant has disclosed her identifying information consists of screenshots of the website of a third party company that ostensibly sells or offers the types of data protected by the VRPA. *See* Pl. Mem. at 2-4; Decl. of Joseph I. Marchese Supp. Mot. Prelim. Inj. ("Marchese Decl."), Exs. D–G, ECF No. 49. The screenshots show that the third party offers information about Defendant's subscribers—information that appears to have been updated as this litigation has proceeded. There is no evidence, however, that actions taken by the third party involved Defendant, or that Defendant is likely to take unlawful action in the

---

[4] Because the Court finds that an individual whose personal information is disclosed in violation of the VRPA suffers a "concrete and particularized" injury sufficient to confer standing, it need not address whether the receipt of unwanted junk mail and other solicitations alternatively and independently constitutes an injury in fact.

7

immediate future. In addition, Plaintiff points to correspondence between her and Defendant, arguing that Defendant's refusal to confirm that it *will not* disclose subscriber information proves that Defendant *will* disclose subscriber information. *See* Pl. Mem. at 4-5; Marchese Decl., Exs. A–C. Conjecture does not justify the "extraordinary remedy" of a preliminary injunction. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). Other than Plaintiff's claims, the Court has no grounds on which to conclude that Plaintiff's alleged harm is traceable to the Defendant, let alone that it could be redressed by court action.[5] Accordingly, Plaintiff lacks standing to move for a preliminary injunction, and because the Court, therefore, lacks subject matter jurisdiction to consider it, her motion is DENIED.

## II. Motion to Stay Discovery

### A. Legal Standard

Under Federal Rule of Civil Procedure 26(c), a court has discretion to stay discovery "for good cause." "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). Although discovery may be stayed pending the outcome of a motion to dismiss, "the issuance of a stay is by no means automatic." *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996). In deciding whether to grant a stay, "a court should consider the breadth of discovery sought and the burden of responding to it, as well as the strength of the underlying motion." *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 Civ. 5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009).

---

[5] The burden for establishing standing to seek a preliminary injunction is different from that when, for example, seeking to bring a claim in the first place. *Cacchillo*, 638 F.3d at 404. Accordingly, the decision here does not preclude the Court from considering anew whether Plaintiff has sufficiently established standing to survive Defendant's pending motion to dismiss.

B. Analysis

These factors weigh in favor of a stay. First, the breadth of discovery is broad, and the burden of responding to Plaintiff's propounded discovery requests, let alone the requests she may make in the future, is substantial.[6] Responding to some of Plaintiff's requests may only require that Defendant reproduce documents it has already produced in similar pending cases, requiring "minimal cost." *See Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942, 2005 WL 388561, at *1 (S.D.N.Y. Feb. 17, 2005); Marchese Ltr., Ex. A at 8. That said, Defendant contends (and Plaintiff does not deny) that her other requests require the production of significant additional information that covers a different time period. Plaintiff's requests are broad and demand extensive responses. *See, e.g.*, Marchese Ltr., Ex. A at 9 (requesting "all contracts with data-mining companies"); *id.* at 23 ("all articles and studies concerning the value or uses" of subscriber identifying information); *id.* at 35 (documents showing "all [] categories of expenses required to operate [Defendant]'s business of selling magazine subscriptions in Michigan"); *id.* at 37 ("[a]ll documents and communications concerning the purpose(s) for which [Defendant]'s Michigan subscribers [sic] [identifying information] was disclosed and/or used after disclosure").

Second, Defendant's motion for a stay is supported by the "substantial arguments for dismissal" set forth in its motion to dismiss. *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72-73 (S.D.N.Y. 2013) (citation omitted). In its motion, made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant contends that

---

[6] While Defendant's motion to stay was pending, the parties submitted a joint letter regarding a discovery dispute. *See* Ltr. from Joseph I. Marchese (Sept. 11, 2015) ("Marchese Ltr."), ECF No. 26. By Order dated September 14, 2015, ECF No. 27, the Court temporarily stayed discovery pending its decision on Defendant's motion. Attached to the letter was a document outlining the discovery requests Plaintiff had already made, as well as Defendant's objections to each. *See* Marchese Ltr., Ex. A. The Court refers to this document in its analysis above.

9

Plaintiff lacks standing, that the Court lacks jurisdiction under the Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), that the VRPA is an unconstitutional restriction on speech, and that Plaintiff's complaint fails to state a claim on which relief can be granted. *See generally* Def. Mem. Supp. Mot. Dismiss, ECF No. 18. Although the Court will not predict the outcome of Defendant's motion, an initial review of the arguments presented in its support suggest that none are frivolous and, because succeeding on each argument alone may warrant dismissal of Plaintiff's entire complaint, ordering discovery to proceed at this time would result in an excessive burden on Defendant. *See Gandler v. Nazarov*, No. 94 Civ. 2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (holding that stay of discovery should be granted where a motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law"); *Hong Leong Fin. Ltd.*, 297 F.R.D. at 75 (staying discovery to avoid creating "a significant burden on defendants in the face of a seemingly strong motion to dismiss").

Finally, a stay will neither prejudice Plaintiff nor unnecessarily delay the proceedings. *Spencer Trask Software & Info. Servs.*, 206 F.R.D. at 368; *see also Rivera v. Heyman*, No. 96 Civ. 4489, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) ("A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue."). Each of Defendant's proffered grounds for dismissing the action pose strictly legal questions, and Plaintiff has not demonstrated that discovery is necessary to rebut Defendant's arguments. Although the Court is hesitant to delay the case's progress, it is nonetheless prudent to postpone the significant costs of discovery at this juncture. Accordingly, Defendant's motion is GRANTED, and discovery is STAYED pending resolution of Defendant's motion to dismiss.

## CONCLUSION

For the reasons outlined above, Plaintiff's motion for preliminary injunction is DENIED for lack of subject matter jurisdiction, and Defendant's motion for a stay of discovery pending resolution of its motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motions at ECF Nos. 24 and 48.

SO ORDERED.

Dated: January 28, 2016
      New York, New York

_____
ANALISA TORRES
United States District Judge