IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JOSEPHINE JAMES EDWARDS, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

HEARST COMMUNICATIONS, INC.,
        Defendant.

No. 1:15-cv-09279-AT-JLC
(consolidated with 15 Civ. 3934
(AT)(JLC))

## DEFENDANT HEARST COMMUNICATIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
Email: jdonnellan@hearst.com

*Attorneys for Defendant Hearst
Communications, Inc.*

Of Counsel:

Andrea R. Butler
Kristen L. Hauser
Evan J. Saucier

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.   HEARST DISPUTED THAT PLAINTIFF "PURCHASED" HER SUBSCRIPTIONS,
     AND THERE IS A MATERIAL ISSUE OF FACT AS TO WHETHER PLAINTIFF
     MET HER BURDEN OF ESTABLISHING THAT ELEMENT OF HER CLAIM..............4

II.  THE EVIDENCE RELIED UPON BY THE COURT WITH RESPECT TO
     TRANSMISSIONS TO EXPERIAN AND COMPANY 3 WAS EITHER
     INADMISSIBLE OR DID NOT "CONCERN" A PURCHASE. ..........................................7

     A. EXPERIAN ............................................................................................................8

     B. COMPANY 3 ........................................................................................................10

III. A MICHIGAN STATE COURT PROCEDURAL RULE CANNOT SUPPORT
     TOLLING BASED ON A PRIOR FEDERAL COURT CLASS ACTION........................12

CONCLUSION...................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................3

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016).............................................................14

*Boelter v. Hearst Commc'ns, Inc.*,
  No. 15 Civ. 3934, --- F. Supp. 3d ---, 2017 WL 3994934 (S.D.N.Y. Sept. 7,
  2017) .......................................................................................................... *passim*

*Campbell v. N.Y.C. Transit Auth.*,
  662 F. App'x 57 (2d Cir. 2016) (unpublished) ...............................................4

*Compressor Eng'g Corp. v. Chicken Shack, Inc.*,
  No. 10 Civ. 10059, 2013 WL 4413752 (E.D. Mich. Aug. 15, 2013) ...................13

*In re Dana Corp.*,
  574 F.3d 129 (2d Cir. 2009)............................................................................4

*Dillon v. Morano*,
  497 F.3d 247 (2d Cir. 2007)............................................................................4

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
  500 F. Supp. 2d 437 (D.N.J. 2007) ...........................................................13, 14

*Hamptons Locations, Inc. v. Rubens*,
  No. 01-CV-5477 (DRH)(WDW), 2006 WL 1455470 (E.D.N.Y. May 25,
  2006) ...........................................................................................................2

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001).............................................................................6

*Lichtenberg v. Besicorp Grp., Inc.*,
  No. 99-7858, 2002 WL 109483 (2d Cir. Jan. 25, 2002) .........................................3

*McCall v. Genpak, LLC*,
  No. 13 Civ. 1947, 2015 WL 5730352 (S.D.N.Y. Sept. 30, 2015) ..........................6

*Microsoft Corp. v. AGA Sols., Inc.*,
  No. 05 CV 5796 (DRH)(MLO), 2009 WL 1033784 (E.D.N.Y. Apr. 17, 2009) ......................3

*Pasha v. William M. Mercer Consulting, Inc.*,
  No. 00 CIV. 8362 RWS, 2004 WL 1474694 (S.D.N.Y. June 30, 2004)...................3

*Pimentel v. City of N.Y.*,
No. 00 CIV. 326 (SAS), 2002 WL 977535 (S.D.N.Y. May 14, 2002).................................3, 6

*Prospect Grp., Inc. v. Kirby*,
No. 91 CIV. 3390 (PKL), 1993 WL 42761 (S.D.N.Y. Feb. 11, 1993)....................................3

*Rogoz v. City of Hartford*,
796 F.3d 236 (2d Cir. 2015)....................................................................................................4

*Spiegler v. Israel Discount Bank of N.Y.*,
No. 01 CIV. 6364 WK, 2003 WL 21983018 (S.D.N.Y. Aug. 19, 2003) ..............................2

*Travelers Ins. Co. v. Buffalo Reinsurance Co.*,
739 F. Supp. 209 (S.D.N.Y. 1990)..........................................................................................3

**Statutes**

47 U.S.C. § 227(b)(3) ...........................................................................................................13

M.C.L. § 445.1711(a) ..............................................................................................................4

M.C.L. § 445.1712....................................................................................................................4, 5

M.C.L. § 445.1715....................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 56(c) ...............................................................................................................8

Fed. R. Evid. 901 ....................................................................................................................8

Local Civil Rule 6.3 ................................................................................................................1

Local Civil Rule 56.1 ..............................................................................................................1, 5

M.C.R. 3.501(F).......................................................................................................................13, 14

Defendant Hearst Communications, Inc. ("Hearst") submits this memorandum of law in support of its motion for reconsideration of the Court's September 7, 2017 Memorandum & Order ("Order") granting in part and denying in part the parties' motions for summary judgment in *Edwards v. Hearst Communications, Inc.*, No. 1:15-cv-09279-AT-JLC. *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 3934, --- F. Supp. 3d. ---, 2017 WL 3994934 (S.D.N.Y. Sept. 7, 2017).

## INTRODUCTION

Hearst brings this motion for reconsideration pursuant to Local Civil Rule 6.3 to respectfully request that the Court reconsider three fundamental errors that if remedied will alter certain of the conclusions in the Order:  two errors in construing the evidence submitted and positions taken by the parties, and one error in considering the law applicable to tolling.

First and most centrally, underpinning the Court's grant of summary judgment to Plaintiff was the finding that "[t]he parties do not dispute . . .  that Plaintiff purchased at least some of her magazine subscriptions from Defendant."  *Boelter*, 2017 WL 3994934, at *20 (citing Hearst's responses to Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 (Pl. 56.1 (ECF No. 178)[1] ¶¶ 169, 171, 173, 176, 178, 182, 183, 187, 191, 192).  This finding belies the record and does not, as is required on summary judgment, draw all inferences in favor of non-movant Hearst.  *Id.* at *7 (citation omitted).  Not only did Plaintiff fail to support this fundamental "fact" with **any** evidence in her 56.1 Statement, Hearst unequivocally disputed that purported fact in response to Plaintiff's 56.1 statement and in its opposition to Plaintiff's motion. *See* Part I below.

---

[1] This memorandum follows the citation conventions set forth in the Order at *1, n.2, including that citations in this Memorandum to the parties' 56.1 Statements include the responses thereto, and that all ECF citations correspond to the docket in *Boelter v. Hearst*, No. 15 Civ. 3934.

Second, in finding that Plaintiff was entitled to partial summary judgment with respect to Experian and "Company 3", the Court also found that certain fields in addition to PRI "concerned" a (theoretical) "purchase" of Plaintiff's magazine subscription. *Boelter*, 2017 WL 3994934, at *12, *20, *21, *25. But in doing so with respect to the Experian transmissions, the Court relied exclusively on testimony from a representative of "Company 2" (and not Experian) that the Court properly rejected as inadmissible elsewhere in the Order; the only admissible evidence shows, instead, that the data in question does not in fact "concern the purchase". *See* Part II.A below. Similarly, the admissible evidence shows that the data sent to Company 3 also does not "concern the purchase". *See* Part II.B below.

Finally, in granting Plaintiff the benefit of tolling for the pendency of the prior action in *Grenke v. Hearst Communications, Inc.*, No. 12 Civ. 14221 (E.D. Mich.), which was filed on September 24, 2012, the Court incorrectly relied upon two cases that did not consider, and have no bearing on, the tolling issue under Michigan state law presented in this case. *See* Part III below.

For the reasons set forth herein, Hearst respectfully requests the Court reconsider these portions of its Order.

## ARGUMENT

Although the standard for a motion for reconsideration is strict, reconsideration is proper if the moving party can point to material facts or controlling law "that might reasonably be expected to alter the conclusion reached by the court." *Hamptons Locations, Inc. v. Rubens*, No. 01-CV-5477 (DRH)(WDW), 2006 WL 1455470, at *2 (E.D.N.Y. May 25, 2006) (internal citation omitted) (granting motion for reconsideration); *see also Spiegler v. Israel Discount Bank of N.Y.*, No. 01 CIV. 6364 WK, 2003 WL 21983018, at *1 (S.D.N.Y. Aug. 19, 2003) (citing

*Lichtenberg v. Besicorp Grp., Inc.*, No. 99-7858, 2002 WL 109483, at *2 (2d Cir. Jan. 25,

2002)).  "Alternatively, 'reconsideration may be granted to correct clear error, prevent manifest

injustice or review the court's decision in light of the availability of new evidence.'"  *Pasha v.*

*William M. Mercer Consulting, Inc.*, No. 00 CIV. 8362 RWS, 2004 WL 1474694, at *1

(S.D.N.Y. June 30, 2004) (internal citations omitted).  Thus, a motion for reconsideration is

properly granted where, *e.g.*, the Court is directed to evidence submitted in support or opposition

to a motion for summary judgment that it previously overlooked or misconstrued.  *See, e.g.*,

*Microsoft Corp. v. AGA Sols., Inc.*, No. 05 CV 5796 (DRH)(MLO), 2009 WL 1033784, at *3

(E.D.N.Y. Apr. 17, 2009) (granting motion for reconsideration and granting summary judgment

where it had previously been denied); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F.

Supp. 209, 211 (S.D.N.Y. 1990) (finding "the record supports reargument and a determination

that summary judgment is not proper" where party pointed to overlooked deposition testimony

that might reasonably have altered the entry of summary judgment had it been considered by the

Court); *Prospect Grp., Inc. v. Kirby*, No. 91 CIV. 3390 (PKL), 1993 WL 42761, at *4 (S.D.N.Y.

Feb. 11, 1993) (denying summary judgment upon reconsideration).

     "In determining whether genuine issues of material fact are in dispute, ***courts must***

***resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving***

***party***."  *Pimentel v. City of N.Y.*, No. 00 CIV. 326 (SAS), 2002 WL 977535, at *1 (S.D.N.Y.

May 14, 2002) (emphasis added) (granting summary judgment upon reconsideration), *aff'd*, 74

F. App'x 146 (2d Cir. 2003) (unpublished); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986) (summary judgment standard "by no means authorizes trial on affidavits.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Campbell v. N.Y.C. Transit Auth.*, 662 F. App'x 57, 59 (2d Cir. 2016) (unpublished), *cert. denied*, 137 S. Ct. 1595 (2017), *reh'g denied*, 137 S. Ct. 2236 (2017); *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015); *Dillon v. Morano*, 497 F.3d 247, 253-54 (2d Cir. 2007) ("[T]he district court misconstrued the burden Morano bore at the summary judgment stage. Morano is not entitled to summary judgment because a jury *could* rule in his favor. Rather, Morano must establish that no reasonable jury, viewing the evidence in the light most favorable to Dillon and drawing all inferences in Dillon's favor, could return a verdict in Dillon's favor. . . . the only evidence [supporting Morano's version of events] comes from Morano's own testimony . . . . A jury is under no obligation to find Morano credible or find this explanation believable. . . . Because the determination of [in favor of Morano] . . . turns largely on Morano's credibility, we find that a genuine issue of material fact exists precluding summary judgment") (citations omitted); *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("[A] jury is free to believe part and disbelieve part of any witness's testimony, and the court considering a summary judgment motion '*must disregard all evidence favorable to the moving party that the jury is not required to believe.*'") (citations omitted).

For the reasons set forth below, this is the rare case where reconsideration is appropriate.

## I.    HEARST DISPUTED THAT PLAINTIFF "PURCHASED" HER SUBSCRIPTIONS, AND THERE IS A MATERIAL ISSUE OF FACT AS TO WHETHER PLAINTIFF MET HER BURDEN OF ESTABLISHING THAT ELEMENT OF HER CLAIM.

Under the Michigan VRPA, only a "customer" is entitled to recover statutory damages. *Boelter*, 2017 WL 3994934, at *20; M.C.L. § 445.1712; M.C.L. § 445.1715. "Customer" is defined (in relevant part) as "a person who purchases . . . written material." M.C.L. § 445.1711(a). Thus, in considering Plaintiff's motion for summary judgment, the Court

correctly recognized that Plaintiff must prove, *inter alia*, that "Plaintiff purchased the magazine from Defendant." *Boelter*, 2017 WL 3994934, at *20; *see also* M.C.L. § 445.1712.  The Court also found "that 'purchaser' is not synonymous with 'subscriber,'" and that to "purchase" means "to obtain for money or by paying a price." *Boelter*, 2017 WL 3994934, at *12.  Each of these findings is supported by the record and the law.

What is *not* supported by the record is the Court's finding that Hearst "do[es] not dispute . . . that Plaintiff purchased at least some of her magazine subscriptions from Defendant." *Id*. at *20 (citing Pl. 56.1 (ECF No. 178) ¶¶ 169, 171, 173, 176, 178, 182, 183, 187, 191, 192); *see also id*. at *25 (finding that it was undisputed that Plaintiff purchased a subscription to *Oprah* in May 2004 and *Redbook* in 2006 (citing Pl. 56.1 (ECF No. 178) ¶¶ 182, 187)).  Hearst most certainly *did* dispute this material fact central to Plaintiff's motion and essential to the survival of her claim.  *See* Def. Opp. (ECF No. 177) at 48, 52-54.  What Hearst did not dispute is that Plaintiff is the "subscriber" to the magazines—she is the person to whom the magazines were addressed.  Pl. 56.1 (ECF No. 178) ¶¶ 169, 171, 173, 176, 178, 182, 183, 187, 191, 192; Findikyan Decl. 1 (ECF No. 154) Ex. B (Murphy Decl.) ¶ 11 (subscriber is person to whom the magazine is addressed).  That is what each of the paragraphs relied upon by the Court speak to: "subscription".  They are silent as to "purchase."

The *only* statement in Plaintiff's 56.1 statement in support of her affirmative motion for summary judgment addressing her purported purchase of a Hearst magazine subscription (and not her "subscription") is in Paragraph 162.  Pl. 56.1 (ECF No. 178).  As that paragraph and Hearst's response demonstrate, the evidence cited by Plaintiff did not support her statement, as required by Local Civil Rule 56.1(c)(1) & (e):

5

**162.    Plaintiff purchased a Hearst magazine subscription for each of those addresses.** *See* Ex. 11, at 3N-11AA (Summary of Info Re Josephine James (Hearst) 10.18.2016).

**Hearst's Response:** Disputed.  The cited evidence does not provide any evidence of who purchased any of Plaintiff's subscriptions or the address at which those subscriptions were received. . . . Hearst does not maintain records of who purchased a given subscription.

Pl. 56.1 (ECF No. 178) ¶ 162 (citing Findikyan Decl. 1 (ECF No. 154) Ex. B (Murphy Decl.) ¶ 14); *see also* Def. 56.1 (ECF No. 173) ¶ 10 (citing Findikyan Decl. 1 (ECF No. 154) Ex. B (Murphy Decl.) ¶ 14, Ex. I (Murphy Dep.) at 121:7-122:7, 130:16-132:19, 315:8-316:9); Def. Suppl. 56.1 (ECF No. 188) ¶ D5 (citing Findikyan Decl. 1 (ECF No. 154) Ex. H (Edwards Dep.) at 37:2-8; Findikyan Decl. 3 (ECF No. 180) Ex. LLL at 7 ¶ 19) (Plaintiff herself distinguishes between subscribe and purchase); Findikyan Decl. 1 (ECF No. 154) Ex. B (Murphy Decl.) ¶ 11 (subscriber is person to whom the magazine is addressed).

As this Court stated in the Order, a party's evidence in support of its motion for summary judgment is required to be included in its 56.1 statement.  *Boelter*, 2017 WL 3994934, at *3 n.3 ("[T]he Second Circuit has been clear that a district court 'is not required to consider what the parties fail to point out in their Local Rule 56.1 statements.'") (citing *McCall v. Genpak, LLC*, No. 13 Civ. 1947, 2015 WL 5730352, at *13 (S.D.N.Y. Sept. 30, 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  Plaintiff failed to meet that essential requirement.  She did not cite any evidence supporting her claim of purchase in her 56.1 statement.

Resolving all ambiguities and all inferences in favor of Hearst on the question of whether Plaintiff in fact personally purchased any of her subscriptions (as the Court must), to the extent Plaintiff's evidence is credited at all, there exists a genuine issue of material fact that should go to a jury.  *See Pimentel*, 2002 WL 977535, at *1.  Absent undisputed evidence that Plaintiff was

the purchaser of her subscriptions—*i.e.*, that Plaintiff personally paid for her subscriptions—Plaintiff's motion for summary judgment must be denied in its entirety.  For these reasons, Hearst respectfully requests that the Court reconsider its decision granting partial summary judgment to Plaintiff.

## II.      THE EVIDENCE RELIED UPON BY THE COURT WITH RESPECT TO TRANSMISSIONS TO EXPERIAN AND COMPANY 3 WAS EITHER INADMISSIBLE OR DID NOT "CONCERN" A PURCHASE.

In the Order, the Court concluded that the inclusion of data fields entitled "Direct to Publisher" (the "DTP Flag"), "Multiple Buyer" (or "Multi-Buyer Flag") and "Order Date" "concerned" Plaintiff's purported purchase of a subscription.  *Boelter*, 2017 WL 3994934, at *6, *11-12, *21-22, *25 (citing Marchese Decl. 1 (ECF No. 171) Ex. 19; Marchese Decl. 1 (ECF No. 171) Ex. 16 at Ex. A).  For the reasons set forth in Part I above, there is a genuine issue of material fact as to whether Plaintiff has established that she purchased her subscriptions.  For this reason alone, based on the summary judgment record, those data fields cannot be said to "concern" Plaintiff's purchase of a subscription.

But even setting aside Plaintiff's failure to meet her burden with respect to her status as the "purchaser" of her subscriptions (and thus her status as a "customer" under the VRPA), the Court erroneously concluded that the data fields associated with Plaintiff in addition to PRI (name, address, and magazine title) sent to Experian and Company 3 are sufficient to "concern the purchase" to establish an actionable disclosure of "a record or information concerning Plaintiff's purchase of the magazine."  *Boelter*, 2017 WL 3994934, at *20, *21, *25.  The Court's Order with respect to the meaning of these data fields should be reconsidered.

A.    Experian

The Court erroneously concluded that a transmission of PRI plus an order date was sufficient to "concern the purchase" to find in favor of Plaintiff on any "disclosures" to Experian.[2] *Boelter*, 2017 WL 3994934, at \*21.  In so doing, the Court relied exclusively on the testimony of Company 2's 30(b)(6) witness as to the meaning of data in the field labeled "order date".  *Id.* (citing Company 2 Dep.'s "[explanation] that 'order date' means '[l]atest purchase date for consumer", which testimony Plaintiff cited in opposition to Def. Suppl. 56.1 (ECF No. 188) ¶¶ D46-D47).  But it is undisputed and the Court correctly held that none of the data fields pertaining to Plaintiff existing in Company 2's database (about which Company 2's designee was testifying) were provided to it by Hearst (*Boelter*, 2017 WL 3994934, at \*23-24); therefore, Company 2's testimony as to the meaning of that field in its own database does not speak to and has no probative value as to the meaning of that field (or any field) in Hearst's Consumer Marketing database, let alone as to fields that appear in the extract logic for a different third party, Experian.  As such, it is inadmissible, incompetent hearsay, and not sufficient to support summary judgment.  Def. Opp. (ECF 177) at 50 and cases cited therein; Fed. R. Civ. P. 56(c); Fed. R. Evid. 901.  Plaintiff offered no admissible corroborating evidence on this point.  As the Court found elsewhere in the opinion regarding purported disclosures to Company 2 (*Boelter*, 2017 WL 3994934, at \*23-24), no reasonable jury could credit Company 2's testimony here. Therefore, resolving all inferences in Hearst's favor, it was improper for the Court to conclude that "Order Date" necessarily concerned a purchase by Plaintiff sufficient to establish an actionable disclosure to Experian.

---

[2]  The same is true with respect to data fields appearing in the extract logic for transmissions to Dunn Data.  *See* Def. Suppl. 56.1 (ECF No. 188) ¶¶ D46-D47, D50, D51, D59.

The only competent evidence as to the meaning of the "Order Date" field in the extract logic for Experian is from Hearst's own testimony, which is undisputed: that data field cannot and does not concern any purchase. Instead, data in that field "represent[s] the date an order was instantiated on the order management system, ***not*** whether a subscription was paid (or not paid) by whom, or whether the subscription was fulfilled or not fulfilled." *See* Def. Suppl. 56.1 (ECF No. 188) ¶ D46 (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG ¶ 13) (emphasis added). Because Plaintiff cannot rely on inadmissible, incompetent or speculative testimony such as Company 2's representative to meet her burden on summary judgment (or to create an issue of fact), the undisputed evidence is that the dates in that field can be "for orders that were paid, orders that were cancelled before payment, orders that were never paid and cancelled by Hearst, orders that were auto-renewed and never paid and fulfilled paid orders." *Id.* ¶ D47 (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG (Murphy Decl.) ¶ 13). In short, the field concerns the fact of an order only, and does not speak to whether the orders were paid or not, much less by whom. The field does not even speak to whether the order was fulfilled. No other fields included in the logic for extracts to Experian speak to payment or order status. *Id.* ¶ D48 (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG (Murphy Decl.) ¶ 14). For this reason, the Court should reconsider its finding that transmissions to Experian included information "concerning the purchase" of any of Plaintiff's subscriptions.

In any event, the Court should reconsider its grant of summary judgment in favor of Plaintiff as to any transmissions to Experian because Plaintiff has not established which of her magazine subscriptions any PRI that may have been sent to Experian related to, or that any order date actually was sent to Experian. She cannot, because there is no evidence in the record as to the particular subscription or subscriptions that were transmitted to Experian. *See* Pl. 56.1 (ECF

No. 178) ¶¶ 91-94 (undisputed that Plaintiff's unspecified "PRI" was sent to Experian in 2011, 2012, 2013, and 2014).  This is not enough to establish liability.  *See Boelter*, 2017 WL 3994934, at *12 n.7.  For example, if the PRI sent to Experian related to the *Good Housekeeping* subscription that expired in 2011 (which subscription was never paid for or serviced), there could have been no actionable disclosure to Experian.  *See Boelter*, 2017 WL 3994934, at *25 (finding that particular subscription cannot support a claim); Def. Opp. (ECF 177) at 29.  The evidence is likewise deficient with respect to "order date".  While the order date field exists in the logic instructing extracts to Experian, there is no evidence that any extract to Experian containing Plaintiff's PRI actually included that field.  *See* Def. Suppl. 56.1 (ECF No. 188) ¶¶ D46-D48 (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG (Murphy Decl.) ¶¶ 13-14); Pl. 56.1 (ECF No. 178) ¶¶ 91-94.  Plaintiff has not met her burden of demonstrating that it did.  At a minimum, there are genuine issues of material fact precluding summary judgment in her favor.  Indeed, in the absence of evidence of any actionable disclosures, summary judgment should be granted to Hearst.

### B.     Company 3

The Court should not have granted summary judgment for Plaintiff on any transmissions to Company 3 because none of the data sent to Company 3 in addition to PRI (namely, the "DTP Flag" and "Multi-Buyer flag" fields) concerned Plaintiff's purchase—they are not "additional information related to the purchase of that subscription . . . ."  *Boelter*, 2017 WL 3994934, at *12, *25.

In concluding that data in a field labeled "DTP Flag" transmitted to Company 3 undisputedly "concerned" Plaintiff's purchase, the Court misinterpreted Mr. Murphy's deposition testimony, parts of which Plaintiff offered to deny Hearst's factual statement that

"[t]he entries in the 'DTP-FLA' column on the [Company 3] printout (Marchese [Decl. 1 (ECF No. 171)] Ex. 19) do not reflect payment or payer status" (Def. Suppl. 56.1 (ECF No. 188) ¶ D45 (citing Findikyan Decl. 1 (ECF No. 154) Ex. I (Murphy Dep.) at 308:13-315:12)).  *Boelter*, 2017 WL 3994934, at *25; *see also id*. at *6 ("Defendant also transmitted data indicating whether Plaintiff's subscriptions were 'Direct to Publisher' ('DTP')—that is, purchased directly from Defendant."), *12, *20.  Mr. Murphy's cited testimony establishes that DTP-Flag is computed from other fields in the database related to order sources and *not* from order payments or fulfillments.  Def. Suppl. 56.1 (ECF No. 188) ¶ D45 (citing Findikyan Decl. 1 (ECF No. 154) Ex. I (Murphy Dep.) at 308:13-315:12).  This makes sense since the DTP Flag value for each of Plaintiff's subscriptions on the Company 3 printout is "Y", including for her expired *Good Housekeeping* subscription that was ***never serviced or paid at all***.  *Boelter*, 2017 WL 3994934, at *25 (citing Marchese Decl. 1 (ECF No. 171) Ex. 19 (spreadsheet showing the heading DTP Flag and the value "Y" for all 4 subscriptions)); Marchese Decl. 1 (ECF No. 171) Ex. 18 (Company 3 Decl.) ¶ 7 (indicating that Company 3 received the data from Hearst and that DTP-Flag was marked "Y"); Pl. 56.1 (ECF No. 178) ¶ 52 (Hearst did not dispute that DTP was an acronym for "direct to publisher").  A value that is the same for subscriptions that were paid and not paid and for subscriptions that were never even fulfilled cannot, by operation of logic, "concern" a purchase.  It was not reasonable to infer that a "Y" in the DTP field concerns a purchase, where it may just as likely (as in the case of Plaintiff's *Good Housekeeping* subscription) concern an order that was not purchased.  The summary judgment standard does not permit such an inference.  To the contrary, it forbids it.  The undisputed evidence shows that the DTP field narrowly concerns order only, and not purchase.

The same reasoning applies for the "Multi-Buyer flag" present on the Company 3 printout.  *See* Marchese Decl. 1 (ECF No. 171) Ex. 19.  Because that value is the same for all four expired subscriptions, including the one that was never paid or serviced, one cannot reasonably conclude that it "concerns" a purchase by Plaintiff.  In reaching that very conclusion, the Court relied on the Company 3 printout and contract, neither of which explain the content of the data field but only show that such a field was populated.  *Boelter*, 2017 WL 3994934, at *25. Hearst submitted evidence that the Multi-Buyer field "on the Company 3 printout (Marchese [Decl. 1 (ECF No. 171)] Ex. 19) does not reflect payment or payer status.  Rather, a flag bearing a 'Y' for yes indicates that a consumer ***subscribed*** to multiple Hearst magazine titles."  Def. Suppl. 56.1 (ECF No. 188) ¶ D43 (emphasis added) (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG (Murphy Decl.) ¶ 7).  Plaintiff did not offer proper evidence to refute this testimony, instead citing only a dictionary and misinterpreting Mr. Murphy's unrefuted declaration (Findikyan Decl. 3 (ECF No. 180) Ex. GGG (Murphy Decl.) ¶ 7).  As Mr. Murphy attested, it is possible for a subscriber to have a "Y" in the "Multi-Buyer" field in extracts to Company 3 "even if they were the recipient of multiple gift subscriptions or one non-gift and one gift subscription." Def. Suppl. 56.1 (ECF No. 188) ¶ D44 (citing Findikyan Decl. 3 (ECF No. 180) Ex. GGG ¶ 7).  Again, Plaintiff did not proffer competent evidence to refute this point.

At a minimum, there are questions of fact precluding summary judgment in Plaintiff's favor with respect to transmissions to Company 3, and, in the absence of evidence of any actionable disclosures, summary judgment to Plaintiff should be denied.

## III.   A MICHIGAN STATE COURT PROCEDURAL RULE CANNOT SUPPORT TOLLING BASED ON A PRIOR FEDERAL COURT CLASS ACTION.

In ruling that Plaintiff was entitled to tolling of her claims for the pendency of the prior class action filed in the United States District Court for the Eastern District of Michigan, the

Court relied on the fact that "[f]ederal district courts both within and outside Michigan have applied M.C.R. 3.501(F) to analyze tolling of Michigan claims." *Boelter*, 2017 WL 3994934, at *10 (citing *Compressor Eng'g Corp. v. Chicken Shack, Inc.*, No. 10 Civ. 10059, 2013 WL 4413752, at *5 (E.D. Mich. Aug. 15, 2013) and *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437, 451 (D.N.J. 2007)).  But it is not a Michigan *claim* that triggers the tolling contemplated by M.C.R. 3.501(F), it is a *case* in Michigan *state* court.  Each of the two cases relied upon in the Order illustrates why that Michigan state court procedural rule has no application to the analysis here.

In *Compressor Engineering*, plaintiff sought to toll the statute of limitations based on a prior class action pending *in Michigan state court*—a case to which the tolling rule of M.C.R. 3.501(F) undisputedly applied because the prior action was subject to the Michigan Court Rules, regardless of the nature of the claim asserted.  2013 WL 4413752, at *2.[3]  It has no bearing on whether a federal court (or the Michigan Supreme Court) would permit tolling based on a prior class action pending in federal court only.

And in *Emerson Electric*, the references to M.C.R. 3.501(F) are, at best, *dicta,* and, in any event, uninformative.  Although the plaintiffs in that case *argued* that M.C.R. 3.501(F) should toll their state law claims, the Court explicitly did not rule on the applicability of the provision, finding that under Michigan law the plaintiffs would not be entitled to the tolling sought even if 3.501(F) *did* apply because there was no nexus between the two class actions at issue and the plaintiffs were not entitled to rely upon the existence of the prior action because they filed their action while the first was pending.  500 F. Supp. 2d at 453 ("*If* the Court found that the Michigan

---

[3] *Compressor Engineering* involved claims brought under the federal Telephone Consumer Protection Act (the "TCPA").  Although a federal statute, TCPA cases can be brought in federal *or* state courts.  47 U.S.C. § 227(b)(3).

courts would permit tolling . . . .") (emphasis added).  Instead, the *Emerson Electric* court granted a motion to dismiss the Michigan claims as barred by the statute of limitations.  Notably, in doing so the Court stated that the plaintiffs should not be able to benefit from the requested tolling in any event "because they would not have been able to continue as parties in the original class action".  *Id*. at 452-53 (finding that plaintiff had not met its burden of proving entitlement to tolling).  As Hearst argued in its summary judgment papers, the same logic applies with equal (if not greater force) here—Plaintiff should not benefit from tolling based on M.C.R. 3.501(F) because the original class action could not have been brought in state court.  Def. Mem. (ECF No. 152) at 60; *see also Boelter v. Hearst Commc'ns, Inc*., 192 F. Supp. 3d 427, 441-42 (S.D.N.Y. 2016) (finding that Plaintiff "would be unable to bring the same class action complaint [in this action] in a Michigan court.").

Hearst respectfully requests that the Court reconsider its Order and instead rule that Hearst is entitled to partial summary judgment applying a three-year statute of limitations, without tolling, to this case and dismissing any claims based on purported transmissions any transmissions prior to November 25, 2012, including Dunn Data.

## CONCLUSION

For the reasons set forth above, Hearst respectfully submits that the Court overlooked or misconstrued material evidence and cases, and failed to resolve all ambiguities and draw all reasonable factual inferences in favor of Hearst as the non-moving party.  Hearst therefore respectfully requests that this Court reconsider its prior Order and deny Plaintiff's motion for partial summary judgment in its entirety, and apply a three-year statute of limitations without tolling to Plaintiff's claims.

Dated:  September 21, 2017

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan
Kristina E. Findikyan
Stephen H. Yuhan
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com

*Attorneys for Defendant Hearst
Communications, Inc.*

Of Counsel:

Andrea R. Butler
Kristen L. Hauser
Evan J. Saucier

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 21, 2017.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan